# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA,<br><br>    Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; ERIC D. HARGAN, in his official capacity as Acting Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; STEVEN T. MNUCHIN, in his official capacity as Secretary of the Treasury; UNITED STATES DEPARTMENT OF THE TREASURY; RENE ALEXANDER ACOSTA, in his official capacity as Secretary of Labor; and UNITED STATES DEPARTMENT OF LABOR,<br><br>    Defendants. | Civil Action No. 2:17-cv-04540 (WB) |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

BACKGROUND .............................................................................................................................. 3

ARGUMENT .................................................................................................................................... 5

    I.    Pennsylvania Lacks Standing. ................................................................................... 5

        A.    Pennsylvania Has Not Shown that It Will Suffer a Cognizable Proprietary Injury Traceable to the Rules. .......................................................................... 5

            1.    Pennsylvania's conjecture about costs associated with the Rules is not cognizable. .............................................................................................. 6

            2.    Pennsylvania cannot base standing on costs triggered by elective state programs. ................................................................................................ 8

        B.    Pennsylvania Cannot Pursue This Litigation on Behalf of the Purported Interests of Its Citizens. ..................................................................................... 8

    II.    Venue Is Not Proper in This District. ...................................................................... 9

    III.    Pennsylvania Has Failed to State a Claim. ............................................................. 11

CONCLUSION ............................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
   458 U.S. 592 (1982) .................................................................................................. 3, 8, 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................ 6

*Bentley v. Ellam*,
   No. 89-5418, 1990 WL 63734 (E.D. Pa. May 8, 1990) ............................................... 10

*Carr v. United States*,
   560 U.S. 438 (2010) ...................................................................................................... 10

*City of Rohnert Park v. Harris*,
   601 F.2d 1040 (9th Cir. 1979) ........................................................................................ 7

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ........................................................................................................ 8

*Gaskin v. Pennsylvania*,
   No. 94-4048, 1995 WL 154801 (E.D. Pa. Mar. 30, 1995) ........................................... 10

*Hosp. Ambulance Serv., Inc. v. Larson*,
   No. 86-2041, 1986 WL 506 (E.D. Pa. Dec. 17, 1986) ................................................. 10

*In re McNeil Consumer Healthcare*,
   877 F. Supp. 2d 254 (E.D. Pa. 2012) .............................................................................. 8

*Leroy v. Great W. United Corp.*,
   443 U.S. 173 (1979) ...................................................................................................... 11

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................ 5, 6, 8

*Maiden Creek Assocs. v. U.S. Dep't of Transp.*,
   823 F.3d 184 (3d Cir. 2016) ........................................................................................... 9

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ........................................................................................................ 9

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923) .................................................................................................... 8, 9

*N.J. Physicians, Inc. v. President of the United States*,
   653 F.3d 234 (3d Cir. 2011) ........................................................................................... 5

*New York v. United States*,
   505 U.S. 144 (1992) ........................................................................................................ 6

*Oregon v. Mitchell*,
   400 U.S. 112 (1970) ........................................................................................................ 6

*Pennsylvania v. Kleppe*,
    533 F.2d 668 (D.C. Cir. 1976) ............................................................................... 6, 7

*Pennsylvania v. New Jersey*,
    426 U.S. 660 (1976) ................................................................................................ 8

*Pennsylvania v. Porter*,
    659 F.2d 306 (3d Cir. 1981) ................................................................................... 9

*People ex rel. Hartigan v. Cheney*,
    726 F. Supp. 219 (C.D. Ill. 1989) ........................................................................... 7

*Perkins v. Snider*,
    No. 94-4785, 1994 WL 530045 (E.D. Pa. Sept. 2, 1994) ..................................... 10

*Raines v. Byrd*,
    521 U.S. 811 (1997) ................................................................................................ 5

*Republican Party of N.C. v. Martin*,
    682 F. Supp. 834 (M.D.N.C. 1988) ...................................................................... 10

*Reuben H. Donnelly Corp. v. FTC*,
    580 F.2d 264 (7th Cir. 1978) ................................................................................ 11

*Rogers v. Civil Air Patrol*,
    129 F. Supp. 2d 1334 (M.D. Ala. 2001) ......................................................... 10, 11

*Seariver Maritime Financial Holdings, Inc. v. Pena*,
    952 F. Supp. 455 (S.D. Tex. 1996) ....................................................................... 10

*Stanton-Negley Drug Co. v. Pa. Dep't of Pub. Welfare*,
    No. 07-1309, 2008 WL 1881894 (W.D. Pa. Apr. 24, 2008) ................................. 10

*State of Iowa ex rel. Miller v. Block*,
    771 F.2d 347 (8th Cir. 1985) .................................................................................. 8

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .................................................................................................. 5

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ................................................................................................ 5

*Wyoming v. U.S. Dep't of the Interior*,
    674 F.3d 1220 (10th Cir. 2012) ........................................................................... 6, 7

*Zubik v. Burwell*,
    136 S. Ct. 1557 (2016) ............................................................................................ 1

**Statutes**

28 U.S.C. § 1391(e)(1) ................................................................................................... 9

42 U.S.C. § 300gg-13(a)(4) ........................................................................................... 4

**Regulations**

26 C.F.R § 54.9815-2713A ................................................................................................... 5

29 C.F.R. § 2590.715-2713A ................................................................................................ 5

45 C.F.R. § 147.131 .............................................................................................................. 5

45 C.F.R. § 147.132(a)(2) ..................................................................................................... 4

45 C.F.R. § 147.132(b) ......................................................................................................... 4

45 C.F.R. § 147.132(c) .......................................................................................................... 4

45 C.F.R. § 147.133(a)(2) ..................................................................................................... 4

45 C.F.R. § 147.133(b) ......................................................................................................... 4

45 C.F.R. § 147.133(c) .......................................................................................................... 4

78 Fed. Reg. 8,456 (Feb. 6, 2013) ........................................................................................ 4

Exec. Order No. 13,798, 82 Fed. Reg. 21,675 (May 4, 2017) ............................................. 3

82 Fed. Reg. 47,792 (Oct. 13, 2017) ............................................................................ 1, 3, 4

82 Fed. Reg. 47,838 (Oct. 13, 2017) ................................................................................ 2, 3

**INTRODUCTION**

This case is about religious liberty and freedom of conscience. In 2010, as part of the Affordable Care Act ("ACA"), Congress enacted a law requiring employers to cover preventive care for women. The law does not mention contraceptive coverage. But the Health Resources and Services Administration ("HRSA"), a division of the Department of Health and Human Services ("HHS"), issued guidelines that required coverage of all FDA-approved contraceptives. At the same time, the government recognized that some employers hold sincere religious objections to contraception, especially certain contraceptives the employers considered to be abortifacients, but decided to exempt only a fraction of those employers—churches and their integrated auxiliaries—from the requirement. Other religious employers remained subject to the mandate and were left either to violate their sincerely held religious beliefs or to be subjected to significant fines.

Years of litigation in dozens of cases followed. In *Burwell v. Hobby Lobby Stores, Inc.*, the Supreme Court held that the "contraceptive mandate imposes a substantial burden on the exercise of religion" that was unlawful under the Religious Freedom Restoration Act ("RFRA"). 134 S. Ct. 2751, 2779 (2014). Rather than extend the church exemption, however, HHS tried "accommodating" religious objectors who did not qualify for that exemption. That decision triggered a new round of multi-district litigation that generated decisions in nine federal courts of appeals. Ultimately, the Supreme Court vacated those decisions and instructed the courts of appeals to give the parties time to try to resolve their differences. *See Zubik v. Burwell*, 136 S. Ct. 1557, 1560 (2016).

On October 6, 2017, in an effort to address serious religious and moral objections and finally bring the litigation to a close, the Departments of HHS, Labor, and the Treasury ("the Agencies") issued interim final rules ("IFRs") that keep the Mandate in place, but exempt religious and moral objectors from having to include contraceptive coverage in insurance plans offered to their employees. *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the ACA, 82 Fed. Reg. 47,792 (Oct. 13, 2017) (the "Religious Exemption Rule"); Moral Exemptions and Accommodations for Coverage of Certain Preventive

1

Services Under the ACA, 82 Fed. Reg. 47,838 (Oct. 13, 2017) (the "Moral Exemption Rule") (collectively also "the Rules").

The Commonwealth of Pennsylvania seeks to reverse this considered decision, demanding that religious and secular minorities facilitate services to which they deeply object. Pennsylvania argues that the new rules violate the Equal Protection Clause, the Establishment Clause, and the Pregnancy Discrimination Act. And it contends that the rules cannot be squared with the ACA's purpose "to give women greater access to necessary preventive care and more control over their own health care decisions." Mem. in Supp. of Pl.'s Mot. for a Prelim. Inj. at 27, ECF No. 8-2 ("PI Mot."). Those positions, if adopted, would apply equally to sweep away the longstanding exemption for churches and their integrated auxiliaries, exposing churches to the contraceptive mandate for the first time.

Nor does Pennsylvania grapple with the ACA's existing exemption for grandfathered plans. Under this exemption, the employers of tens of millions of employees have no obligation to cover contraceptive services at all. Pennsylvania ignores the vast scope of this exemption, while overstating the limited effect of the exemptions here. At the same time, the Commonwealth dismisses the benefit of the new rules to employers whose religious obligations or duties of conscience would preclude them from offering coverage to which they object.

The federal government acted lawfully in making a policy choice grounded in respect for religious liberty. Both the ACA and RFRA provide firm statutory authority for the Rules. And it is settled law that the government may accommodate religion without running afoul of the Equal Protection Clause or the Establishment Clause. This case is not about "us[ing] the arm of the state to permit employers to impose their religious beliefs on their female employees" as Pennsylvania would have it. PI Mot. at 1. It is about protecting a narrow class of sincere religious and moral objectors from being forced to facilitate practices that conflict with their beliefs.

But this Court should not reach the merits at all, because the Commonwealth lacks standing. The Commonwealth seeks to enjoin Rules that do not apply to it and that do not affect any identified state residents. Pennsylvania claims to be injured because it has an interest in the

health and safety of its citizens, but it is black-letter law that a state cannot assert the rights of its citizens against the federal government.  *See Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 610 n.16 (1982).  It also asserts that it will lose funds, but that claim is far too conjectural to support standing to sue.  In short, the Commonwealth would prefer that the Agencies had made a different policy choice, but it lacks standing to pursue that policy disagreement in a federal court. In any event, the Commonwealth is in the wrong court; venue is not proper here.

For these reasons and the reasons set forth in Defendants' opposition to Plaintiff's motion for a preliminary injunction, the Court should deny Pennsylvania's motion for a preliminary injunction, and should dismiss the Complaint.

## BACKGROUND

The history of the regulatory exemption and accommodations are discussed in detail in Defendants' opposition to Plaintiff's motion for a preliminary injunction that is filed contemporaneously with this Motion to Dismiss, and Defendants respectfully refer the Court to that filing for the relevant background of the Mandate.

On May 4, 2017, the President issued an "Executive Order Promoting Free Speech and Religious Liberty."  Exec. Order No. 13,798, 82 Fed. Reg. 21,675 (May 4, 2017).  Regarding "Conscience Protections with Respect to Preventive-Care Mandate," that order instructed the Agencies to "consider issuing amended regulations, consistent with applicable law, to address conscience-based objections to the preventive-care mandate promulgated under section 300gg-13(a)(4) of title 42, United States Code."  *Id*.

"Consistent with the President's Executive Order and the Government's desire to resolve the pending litigation and prevent future litigation from similar plaintiffs," the Agencies concluded that it was "appropriate to reexamine the exemption and accommodation scheme currently in place for the Mandate" and issued the IFRs at issue here on October 6, 2017.  Religious Exemption Rule, 82 Fed. Reg. 47,792; *accord* Moral Exemption Rule, 82 Fed. Reg. 47,838.  The Agencies have requested public comments on the Rules by December 5, 2017.

The Religious Exemption Rule expands the exemption for non-governmental plan sponsors that object to providing all or a subset of contraceptive services based on sincerely held religious beliefs, as well as institutions of higher education in their arrangement of student health plans, to the extent of these entities' sincerely held religious beliefs. 45 C.F.R. § 147.132(a)(2). The Moral Exemption Rule provides an exemption for certain non-governmental plan sponsors that object to providing all or a subset of contraceptive services based on sincerely held moral convictions, as well as institutions of higher education in their arrangement of student health plans, to the extent of these entities' sincerely held moral convictions. *Id*. § 147.133(a)(2).[1]

Under the Rules, HRSA remains free to define "contraceptive services" as "contraceptive or sterilization items, procedures, or services, or related patient education or counseling, to the extent specified for purposes of § 147.130(a)(1)(iv)." *See* 82 Fed. Reg. at 47,835; 45 C.F.R. § 147.132(c); 45 C.F.R. § 147.133(c). "Contraceptive services" do not include contraceptive services for men, and never have, because the ACA only authorizes HRSA to develop guidelines for "additional preventive care and screenings" to be covered "with respect to women." 42 U.S.C. § 300gg-13(a)(4); 78 Fed. Reg. 8,456, 8,458 n.3 (Feb. 6, 2013) (excluding "services relating to a man's reproductive capacity, such as vasectomies and condoms" from the definition of "preventive services" that must be provided without cost sharing).[2] As under the previous rule, exempt entities are not required to self-certify, but they are still subject to the ERISA disclosure requirements for plan exclusions or reductions in a covered service or benefit. 82 Fed. Reg. at 47,808 & n.54; *id*. at 47,804 & n.32. The Rules also maintain the accommodation process as a voluntary mechanism

---

[1] Each rule also includes an "individual exemption" that allows a willing plan sponsor of a group health plan or a willing health insurance issuer offering group or individual health insurance coverage to provide a separate benefit package option or separate policy, certificate, or contract of insurance to an individual who objects to coverage for contraceptive services based on sincerely held religious beliefs or moral convictions. 45 C.F.R. §§ 147.132(b), 147.133(b).

[2] "Contraceptive services" under the Rules also do not include drugs or methods approved by the FDA for contraceptive use that are prescribed for medical treatment, because 42 U.S.C. § 300gg-13(a)(4) does not apply to non-preventive care provided for treatment of an existing condition. *See* 82 Fed. Reg. at 47,805 & n.48.

4

to provide contraceptive availability for women covered by the plans of exempt entities that choose to use it. 45 C.F.R. § 147.131; 26 C.F.R § 54.9815-2713A; 29 C.F.R. § 2590.715-2713A. On October 6, 2017, HRSA updated its Guidelines to exempt entities and individuals that qualify for exemptions from the Guidelines' requirements. Guidelines, http://www.hrsa.gov/womens-guidelines.

## ARGUMENT

### I. PENNSYLVANIA LACKS STANDING.

As an initial matter, Plaintiff is not entitled to a preliminary injunction because this Court lacks standing and therefore jurisdiction to adjudicate its claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). To establish standing, a plaintiff must show that it has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and … (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). The harm must be "'distinct and palpable, as opposed to merely abstract." *N.J. Physicians, Inc. v. President of the United States*, 653 F.3d 234, 238 (3d Cir. 2011) (citation omitted). Allegations of possible future injury do not suffice; rather, "[a] threatened injury must be certainly impending to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). A plaintiff that "alleges only an injury at some indefinite future time" has not shown an injury in fact; "the injury [must] proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n.2. The standing inquiry is "especially rigorous" where, as here, a plaintiff asks a federal court "to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

### A. Pennsylvania Has Not Shown that It Will Suffer a Cognizable Proprietary Injury Traceable to the Rules.

The challenged Rules apply to non-governmental employers, not to states. They do not command the Commonwealth to take, or refrain from taking, any action. Accordingly, this case

5

is unlike the most common situation in which states have standing to challenge federal law. *See, e.g., New York v. United States*, 505 U.S. 144 (1992); *Oregon v. Mitchell*, 400 U.S. 112 (1970). Instead, Pennsylvania complains of injury "from the government's allegedly unlawful regulation (or lack of regulation) of someone else," making standing "substantially more difficult to establish." *See Lujan*, 504 U.S. at 562. The Commonwealth nonetheless seeks to challenge the expanded exemptions for religious and moral objections set forth in the Rules based on conjecture about the indirect or incidental financial consequences that allegedly will flow from them. It fails to show that the Rules will result in any injury for the Commonwealth, much less that an injury is "*certainly* impending." *Id.* at 564 n.2.

**1. Pennsylvania's conjecture about costs associated with the Rules is not cognizable.**

Pennsylvania's first theory of harm is that the expanded exemptions will injure the state's finances by "forc[ing]" the Commonwealth "to bear additional health care costs, in part, due to an increase in unintended pregnancies." Compl. ¶ 19, ECF No. 1; *see also id.* ¶¶ 129-39; PI Mot. at 13-16, 38-47. But conclusory allegations that a state's budget or tax revenues will be harmed in some general way by a federal policy are not sufficient to support standing. *See, e.g., Pennsylvania v. Kleppe*, 533 F.2d 668, 672-73 (D.C. Cir. 1976); *Wyoming v. U.S. Dep't of the Interior*, 674 F.3d 1220, 1234 (10th Cir. 2012); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The only specific example the Commonwealth provides of an employer planning to stop providing contraceptive coverage to Pennsylvania residents is Notre Dame, PI Mot. at 13 n.9, which has since announced that its third-party administrator will provide contraceptive coverage to its health plan members at no cost.[3] It also fails to allege that the employees of such an employer would have no other access to contraceptive coverage through, for example, a family member's plan.

---

[3] *See* Margaret Fosmoe, *Notre Dame employees will retain access to free birth control*, South Bend Tribune, Nov. 8, 2017 (attached as Ex. A); Tami Luhby, *Notre Dame reverses decision to end birth control coverage*, Nov. 8, 2017 (attached as Ex. B) ("A university spokesman confirmed that students would continue to have access to no-cost birth control, as well.").

6

Even if state residents do lose coverage as a result of the Rules, Pennsylvania's alleged harms rely on an attenuated chain of causation. It is pure speculation that "[s]ome women who lose their employer-sponsored health coverage for contraceptive care will seek coverage through" programs that are at least partially state-funded, thus requiring increased state spending. *See id*. ¶ 134; PI Mot. at 14, 43. And it requires even further speculation to assume that these gainfully employed women will meet the low-income requirements of these programs. *Id*. The Commonwealth's allegation that the expanded exemptions will result in "an increase in unintended pregnancies" in Pennsylvania, causing its state-funded health programs to incur greater costs, is even more attenuated. Compl. ¶ 136; PI Mot. at 15. The costs of such "unintended pregnancies" would likely be otherwise covered by these employees' health plans. Moreover, the expanded exemptions do not "forc[e]" anyone to forgo contraceptive use, much less do they "forc[e]" eligible individuals to seek subsidized contraception and prenatal care and delivery services from state programs. Pennsylvania's "belie[f] that the Commonwealth has enjoyed increased tax revenue as a result of its female citizens enjoying increased savings borne from the contraceptive mandate" is similarly unavailing. If such hypothetical impacts on state finances were enough to provide a state with Article III standing, a state could challenge virtually any federal policy.[4] *See Wyoming*, 674 F.3d at 1234 ("concrete evidence" of an impact on state finances is needed because of "the unavoidable economic repercussions of virtually all federal policies" (quoting *Kleppe*, 533 F.2d at

---

[4] Even if Pennsylvania had alleged a fiscal injury traceable to the expanded exemptions in the Rules, that injury would not suffice to confer the state with standing on behalf of itself. The Commonwealth's generalized allegation of harm to the state's finances or loss of increased tax revenue is not a proprietary interest apart from the interests of its citizens. As explained below, a state cannot sue the federal government asserting a *parens patriae* interest in its citizens' economic well-being. The Commonwealth cannot circumvent that black-letter legal principle by asserting an interest in tax revenues from its residents that is merely an assertion of *parens patriae* standing by another name. *See City of Rohnert Park v. Harris*, 601 F.2d 1040, 1044-45 (9th Cir. 1979) (alleged "loss of investment profits and tax revenues" by citizens if development did not proceed implicates a *parens patriae* interest); *People ex rel. Hartigan v. Cheney*, 726 F. Supp. 219, 225 (C.D. Ill. 1989) (concluding that alleged decrease in state revenue and increase in social spending did not confer standing on Illinois because they "fall on the taxpayers and citizens of Illinois and not on the state qua state").

672)). *See also State of Iowa ex rel. Miller v. Block*, 771 F.2d 347, 353 (8th Cir. 1985) ("these injuries fail to constitute distinct, palpable injuries to the State as a state").

### 2. Pennsylvania cannot base standing on costs triggered by elective state programs.

The Commonwealth alleges that it will suffer injury to "Pennsylvania's coffers" because it will be "providing contraceptive care services through already over-burdened state programs." Compl. ¶¶ 134-35; PI Mot. at 3. But a state has suffered no legally cognizable injury if an eligible person applies for a benefit that a state has elected to provide (such as those available through a state's Family Planning Services, or Title X programs). *See Lujan*, 504 U.S. at 560 ("injury in fact" requires "an invasion of a *legally protected* interest" (emphasis added)). The expanded exemptions do not require Pennsylvania to provide any state benefits to the employees of employers who opt into the exemption; whether to provide such benefits is a decision made by the Commonwealth. Accordingly, costs associated with providing subsidized contraception for state residents whose employers who opt into the exemption is a "self-inflicted injur[y]" that is not traceable to the challenged regulations and is not a cognizable injury under Article III. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013); *see also Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (finding "[t]he injuries to the [states'] fiscs were self-inflicted, resulting from decisions by their respective state legislatures" and "[n]o State can be heard to complain about damage inflicted by its own hand"); *In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 277 (E.D. Pa. 2012) (plaintiffs could not base standing on costs that "[we]re the result of the plaintiffs' own choices and [we]re not fairly traceable to the actions of the defendants").

### B. Pennsylvania Cannot Pursue This Litigation on Behalf of the Purported Interests of Its Citizens.

The Commonwealth cannot overcome its failure to show its own standing by asserting a right as *parens patriae* to represent the interests of its citizens. *See* Compl. ¶¶ 20, 140. As *parens patriae*, a state can sue a private party to protect its "quasi-sovereign interest" in the health and well-being of its citizens. *Snapp*, 458 U.S. at 602-03. But it cannot bring such a suit against the federal government. "It has been settled since *Massachusetts v. Mellon*, 262 U.S. 447, 486 (1923)

8

that a state may not attempt as *parens patriae* to enforce rights of its citizens 'in respect of their relations with the federal government. In that field it is the United States, and not the State, which represents [its citizens] as *parens patriae* when such representation becomes appropriate; and to the former, and not to the latter, they must look for such protective measures as flow from that status.'" *Pennsylvania v. Porter*, 659 F.2d 306, 317 (3d Cir. 1981) (en banc) (quoting *Mellon*, 262 U.S. at 486); *see also Maiden Creek Assocs. v. U.S. Dep't of Transp.*, 823 F.3d 184, 193 (3d Cir. 2016). This well-settled rule controls here.

Plaintiff's invocation of its "quasi-sovereign" interests similarly fails to establish standing. In *Massachusetts v. EPA*, 549 U.S. 497, 522–23 (2007), the Supreme Court allowed the Commonwealth of Massachusetts to sue the federal government to vindicate a claim of a concrete, direct injury to its quasi-sovereign interests; Massachusetts alleged harm to the physical integrity of its "sovereign territory," damaging its "independent interest in all the earth and air within its domain." *Id.* at 519. Pennsylvania here alleges no such concrete, direct injury to its own interests. Rather, it alleges "quasi-sovereign" interests only in the health and safety of its residents. Compl. ¶ 140; PI Mot. at 46-47. Again, these are really the interests of its citizens, and the Commonwealth cannot assert those interests as *parens patriae* against the federal government. *Snapp*, 458 U.S. at 602-03. "[T]here is a critical difference between allowing a State 'to protect her citizens from the operation of federal statutes' (which is what *Mellon* prohibits) and allowing a State to assert its rights under federal law (which it has standing to do)." *Massachusetts*, 549 U.S. at 520 n.17.

## II. VENUE IS NOT PROPER IN THIS DISTRICT.

There are three possible bases for venue in a suit against a federal agency or officer; suit may be brought in a district in "which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). The Commonwealth asserts that venue is proper in this district because it "resides in this district and because a substantial part of the events giving rise to this action occurred in this judicial district." Compl. ¶ 26. It is wrong on both counts.

The Commonwealth resides in the Middle District of Pennsylvania, not here. Indeed, the Commonwealth has itself so argued. *E.g., Stanton-Negley Drug Co. v. Pa. Dep't of Pub. Welfare*, No. 07-1309, 2008 WL 1881894, at *4 (W.D. Pa. Apr. 24, 2008) ("Defendants … argue that venue is improper under § 1391(b)(1) because the Defendant State Officials do not officially reside in the Western District of Pennsylvania, but rather in Harrisburg, which is located in the Middle District of Pennsylvania."). The courts agree. *See, e.g., id.*; *Gaskin v. Pennsylvania*, No. 94-4048, 1995 WL 154801, at *1 (E.D. Pa. Mar. 30, 1995) (accepting Commonwealth's argument); *Perkins v. Snider*, No. 94-4785, 1994 WL 530045, at *1 (E.D. Pa. Sept. 2, 1994) (same); *Bentley v. Ellam*, No. 89-5418, 1990 WL 63734, at *1 (E.D. Pa. May 8, 1990) (same); *Hosp. Ambulance Serv., Inc. v. Larson*, No. 86-2041, 1986 WL 506, at *2 (E.D. Pa. Dec. 17, 1986) (same). And for good reason: "It is well settled for venue purposes that the residence of a state agency or state official is the state capitol, even when branch offices of the state agency are maintained in other parts of the state." *Bentley*, 1990 WL 63734, at *1.

Nor have "a substantial part of the events giving rise to this action occurred in this judicial district." Compl. ¶ 26. The Commonwealth has filed a facial challenge to two Rules issued by federal agencies headquartered in Washington, D.C. and has not alleged that any specific residents of this district would be affected by the Rules. The only "events or omissions" that "giv[e] rise to the claim occurred" when the Agencies promulgated the Rules at their headquarters. That cannot support venue here. *See Rogers v. Civil Air Patrol*, 129 F. Supp. 2d 1334, 1339 (M.D. Ala. 2001) (noting events giving rise to facial challenge to federal law occurred where law was enacted); *Seariver Maritime Financial Holdings, Inc. v. Pena*, 952 F. Supp. 455, 462 (S.D. Tex. 1996) (venue would be proper in District of Columbia where challenge is to allegedly unconstitutional enactment of federal statute); *Republican Party of N.C. v. Martin*, 682 F. Supp. 834, 836-37 (M.D.N.C. 1988) (same result under prior version of venue statute). Venue is not appropriate here simply because the effects of the Rules might, one day, be felt here. Section 1391(e) refers in the past tense to events that have already "occurred," thereby pointedly excluding venue choices based on events that have not yet happened. *See Carr v. United States*, 560 U.S. 438, 448 (2010)

10

("Congress' use of a verb tense is significant in construing statutes"); *Reuben H. Donnelly Corp. v. FTC*, 580 F.2d 264, 268 (7th Cir. 1978) ("To base a venue determination on the possibility of some future administrative ruling approaches the question backwards."). Moreover, courts should focus on the actions of the defendant, not of the plaintiff. *Rogers*, 129 F. Supp. 2d at 1338–39. "[T]he purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-86 (1979). The only events giving rise to this suit occurred in Washington, D.C., not here.

### III. PENNSYLVANIA HAS FAILED TO STATE A CLAIM.

As discussed in detail in Defendants' opposition to Plaintiff's motion for a preliminary injunction that is filed contemporaneously with this Motion to Dismiss, Plaintiff has failed to state claims for violation of the procedural requirements of the APA (Count IV), *see* Mem. in Opp'n to Pl.'s Mot. for a Prelim. Inj. at 22-29, violation of the substantive requirements of the APA (Count V), *see id*. at 29-44, violation of Title VII of the Civil Rights Act and the Pregnancy Discrimination Act (Count II), *see id*. at 45-47, violation of equal protection of the law (Count I), *see id*. at 47-50, or violation of the Establishment Clause (Count III), *see id*. at 50-54. This case should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **CONCLUSION**

The Court should deny Pennsylvania's motion for a preliminary injunction and dismiss the complaint.

DATED: November 16, 2017              Respectfully submitted,

                                                      CHAD A. READLER
Acting Assistant Attorney General

ETHAN P. DAVIS
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

JOEL McELVAIN
Assistant Director, Federal Programs Branch

*/s/ Elizabeth L. Kade*
ELIZABETH L. KADE (D.C. Bar No. 1009679)
Trial Counsel
U.S. Dep't of Justice, Civil Div., Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C.  20530
(202) 616-8491
Elizabeth.L.Kade@usdoj.gov

*Attorneys for Defendants*