# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF
PENNSYLVANIA,

     *Plaintiff,*

v.

DONALD J. TRUMP, *et al.*

     *Defendants,*

LITTLE SISTERS OF THE POOR
SAINTS PETER AND PAUL HOME,

     *Proposed Defendant-Intervenors*

Civil No.  2:17-CV-4540

**PROPOSED INTERVENOR'S
MEMORANDUM IN SUPPORT OF
EMERGENCY MOTION TO
INTERVENE**

Nicholas M. Centrella
Conrad O'Brien PC
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Telephone: (215) 864-8098
Facsimile: (215) 864-0798
ncentrella@conradobrien.com

Mark Rienzi*
Lori Windham*
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW
Suite 700
Washington, DC 20036
Telephone: (202) 955-0095
Facsimile: (202) 955-0090

*Counsel for Proposed Intervenor*
*\*Admission proc hac vice pending*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ........................................................................................... 1

BACKGROUND .............................................................................................. 2

   A. Proposed Intervenors ............................................................................ 2

   B. The Preventive Services Mandate ....................................................... 2

   C. The Regulatory Mechanism for Complying
      with the Mandate ................................................................................. 4

   D. Intervenor's Lawsuit, Supreme Court Orders,
      and the Interim Final Rule ................................................................. 6

   E. This Lawsuit ......................................................................................... 9

STANDARD OF REVIEW ............................................................................. 10

ARGUMENT .................................................................................................. 11

   I. The Little Sisters should be granted intervention as of right ...................... 11

      A. The Little Sisters' motion is timely ............................................... 11

      B. The Little Sisters have a protectable interest in not
         being forced to choose between violating their faith
         and paying crippling fines .......................................................... 12

      C. The Little Sisters' ability to protect their interests may
         be impaired by the disposition of this action. ............................ 14

      D. The Little Sisters' interests are not adequately
         represented by the existing parties to the action ....................... 15

   II. Alternatively, proposed Intervenors should be permitted
       to intervene under Rule 24(b) .......................................................... 18

CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Donaldson v. United States,*
400 U.S. 517 (1971) ............................................................................. 13

*Harris v. Pernsley,*
820 F.2d 592 (3d Cir. 1987).............................................................. 11, 14

*Kleissler v. U.S. Forest Service,*
157 F.3d 964 (3d Cir. 1998)...........................................................*passim*

*In re Linerboard Antitrust Litigation,*
333 F. Supp. 2d 333 (E.D. Pa. 2004) .............................................. 10, 18

*Little Sisters of the Poor Home for the Aged, Denver, Colo. v. Burwell,*
794 F.3d 1151 (10th Cir. 2015) ........................................................ 7, 16

*Little Sisters of the Poor v. Sebelius,*
134 S. Ct. 1022 (2014) ....................................................................... 6, 7

*California ex rel. Lockyer v. United States,*
450 F.3d 436 (9th Cir. 2006) ................................................................ 15

*Mille Lacs Band of Chippewa Indians v. State of Minnesota,*
989 F.2d 994 (8th Cir. 1993) ................................................................ 17

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.,*
72 F.3d 361 (3d Cir. 1995)...................................................... 12, 15, 16

*Olympic Sports Data Servs., Ltd. v. Maselli,*
2008 WL 5377626 (E.D. Pa. Dec. 22, 2008) ....................................... 10

*Reich v. ABC/York-Estes Corp.,*
64 F.3d 316 (7th Cir. 1995) .................................................................. 10

*Sw. Ctr. for Biological Diversity v. Berg,*
268 F.3d 810 (9th Cir. 2001) ................................................................ 10

*Brody ex rel. Sugzdinis v. Spang,*
957 F.2d 1108 (3d Cir. 1992)......................................................... 14, 15

*Texas v. United States,*
805 F.3d 653 (5th Cir. 2015) ................................................................ 15

*Thompson v. Horsham Twp.*,
  2008 WL 2389258 (E.D. Pa. June 10, 2008) ........................................................ 12

*Trbovich v. United Mine Workers*,
  404 U.S. 528 (1972) ................................................................................................ 15

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) .................................................................................. 19

*United States v. Territory of Virgin Islands*,
  748 F.3d 514 (3d Cir. 2014) ............................................................................ 12, 16

*W. Goshen Sewer Auth. v. U.S. E.P.A.*,
  2013 WL 3914481 (E.D. Pa. July 30, 2013) ........................................................ 12

*Wallach v. Eaton Corp.*,
  837 F.3d 356 (3d Cir. 2016) ............................................................................ 11, 12

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare*,
  701 F.3d 938 (3d Cir. 2012) ........................................................................... *passim*

*Zubik v. Burwell*,
  136 S. Ct. 1557 (2016) ......................................................................................... 7, 16

## Statutes and Rules

26 U.S.C. § 4980H ..................................................................................................... 3, 4

26 U.S.C. § 5000A ......................................................................................................... 3

26 U.S.C. § 6033 ............................................................................................................. 4

29 U.S.C. § 1185d ........................................................................................................... 3

42 U.S.C. § 300gg-13 ..................................................................................................... 3

Religious Freedom Restoration Act, 42 U.S.C. § 2000bb ............................................ 5

42 U.S.C. § 18011 ........................................................................................................... 4

Fed R. Civ. P. 24 ................................................................................................... 10, 18

## Regulations

45 C.F.R. § 147.130 ........................................................................................................ 3

75 Fed. Reg. 34,538 (June 17, 2010) ............................................................................ 4

76 Fed. Reg. 46,621 (Aug. 3, 2011) .............................................................................. 3

77 Fed. Reg. 8725 (Feb. 15, 2012) ............................................................... 3

78 Fed. Reg. 39,870 (July 2, 2013) ........................................................... 4, 5

80 Fed. Reg. 41,318 (July 14, 2015) ............................................................ 5

82 Fed. Reg. 47,792  (Oct. 13, 2017)............................................. 8, 13, 17, 18

Exec. Order No. 13,798, 82 Fed. Reg. 21,675 (May 4, 2017) ....................... 8

**Other Authorities**

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal
    Practice and Procedure: Civil 2d § 1908 (1986) ................................... 10

Committee on Preventive Services for Women, Institute of Medicine,
    *Clinical Preventive Services for Women: Closing the Gap* (2011) ......................... 3

Docket, *Little Sisters of the Poor v. Sebelius*, No. 13-cv-2611 (D. Colo.)............... 6, 16

Emergency Motion for Injunction Pending Appeal, *Little Sisters of the
    Poor v. Burwell*, No. 13-1540 (10th Cir. Dec. 28, 2013) ......................... 6

Food and Drug Administration, Birth Control Guide,
    http://bit.ly/2prP9QN.................................................................. 3

Kaiser Family Found. & Health Research & Educ. Trust,
    *Employer Health Benefits 2017 Annual Survey* (2017)........................... 4

Order, *Little Sisters of the Poor v. Burwell*, No. 13-1540
    (10th Cir. Dec. 31, 2013) ..................................................... 6

Order, *Little Sisters of the Poor v. Hargan*, No. 13-1540
    (10th Cir. June 27, 2016) ..................................................... 7

Order, *Little Sisters of the Poor v. Sebelius*, No. 13A691
    (Sup. Ct. Dec. 31, 2013)...................................................... 6

Pet'rs' Br., *Little Sisters of the Poor Home for the Aged, et al. v.
    Burwell*, 794 F.3d 1151 (10th Cir. 2015) (No. 15-105) ....................... 5-6

# INTRODUCTION

For four years, the Little Sisters of the Poor have fought for their right to live out their faith and fulfill their mission of serving the elderly poor without the threat of government fines. The Supreme Court has twice stepped in to protect their rights, most recently directing the Department of Health and Human Services to reconsider its regulations and arrive at a solution that would respect the Little Sisters' religious freedom. Pennsylvania was aware of these ongoing lawsuits, and of the injunctions protecting the Little Sisters, but sat on the sidelines.

As a direct result of the Little Sisters' lawsuit, the federal government revised its regulations to exempt the Little Sisters and religious employers like them. Given those revisions, the Little Sisters had looked forward to putting litigation behind them and focusing on their mission of service. But now Pennsylvania is seeking a nationwide injunction to take away the Little Sisters' religious exemption. In bringing their lawsuit, Pennsylvania studiously avoided the still-ongoing litigation between the federal government and the religious objectors, not seeking to intervene in the Little Sisters' existing lawsuit, nor in any one of the dozens of other such lawsuits in Pennsylvania and around the country. Nor did Pennsylvania address itself to the United States Supreme Court, which has issued an injunction that precludes the nationwide injunction that Pennsylvania seeks from this Court. Instead Pennsylvania engaged in blatant forum shopping, filing its own complaint against the federal government in this Court, apparently afraid to even utter the Little Sisters' name in a lawsuit that is about their rights, not the Commonwealth's. This is irresponsible political grandstanding of the first order, but comes at the expense of real people—the

Little Sisters and the people they serve—who need a real religious exemption.

The Little Sisters cannot stand idly by while Pennsylvania threatens their ministry by trying to snatch away the protections the Sisters have fought so long to keep. This lawsuit seeks to deprive the Little Sisters of the protections provided by the Constitution, federal civil rights laws, and the new regulations, and the Little Sisters are therefore entitled to intervene to defend themselves.

## BACKGROUND

### A. Proposed Intervenors

The Little Sisters of the Poor Saints Peter and Paul Home in Pittsburgh, Pennsylvania, is a religious nonprofit corporation operated by an order of Catholic nuns whose faith inspires them to spend their lives serving the sick and elderly poor. Mother Superior Marie Vincente Decl. ¶¶ 4, 12, 16-17. Each Little Sister takes a vow of obedience to God and of hospitality "to care for the aged as if he or she were Christ himself." *Id.* at ¶ 36. The Little Sisters treat each "individual with the dignity they are due as a person loved and created by God," and they strive to "convey a public witness of respect for life, in the hope that [they] can build a Culture of Life in our society." *Id.* at ¶ 19. Based on Catholic doctrine, the Little Sisters oppose contraception, sterilization, and abortion, and they believe that it is religiously wrong for them to facilitate the provision of those services to their employees in connection with their health insurance plans. *Id.* at ¶ 37.

### B. The Preventive Services Mandate

This case involves the legality of religious exemptions from a regulation mandating that some employers provide health insurance coverage for contraception, sterilization, and abortion-inducing drugs and devices.

2

Under the Patient Protection and Affordable Care Act, certain employers with at least 50 full-time employees—must offer "a group health plan or group health insurance coverage" that provides "minimum essential coverage." 26 U.S.C. § 5000A(f)(2), 26 U.S.C. § 4980H(a), (c)(2). That "minimum essential coverage" must include, among other things, coverage for "preventive care and screenings" for women. 42 U.S.C. § 300gg-13(a)(4); 29 U.S.C. § 1185d.

Congress did not specify what "preventive care and screenings" means. Instead, Congress delegated that task to the Department of Health and Human Services ("HHS"). *Id.* HHS, in turn, asked the Institute of Medicine ("IOM"), for recommendations, and the IOM recommended that HHS define "preventive care" to include, among other things, "the full range of Food and Drug Administration-approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive capacity." Committee on Preventive Services for Women, Institute of Medicine, *Clinical Preventive Services for Women: Closing the Gap* 109-10 (2011). The 20 FDA-approved contraceptive methods include both drugs and devices that operate to prevent fertilization of an egg, and four drugs and devices—two types of intrauterine devices and the drugs commonly known as Plan B and *ella*—that can prevent implantation of a fertilized egg. Food and Drug Administration, Birth Control Guide, http://bit.ly/2prP9QN. Only days after the recommendations were published, HHS adopted them entirely in an interim final rule. 76 Fed. Reg. 46,621 (Aug. 3, 2011); 77 Fed. Reg. 8725 (Feb. 15, 2012); 45 C.F.R. § 147.130(a)(1)(iv).

However, not all private employers are subject to the contraceptive mandate.

3

First, nearly a quarter of large employers are exempt through the Affordable Care Act's exception for "grandfathered health plans." *See* 26 U.S.C. § 4980H(c)(2); 42 U.S.C. § 18011; 75 Fed. Reg. 34,538, 34,542 (June 17, 2010); *see also* Kaiser Family Found. & Health Research & Educ. Trust, *Employer Health Benefits 2017 Annual Survey* 204 (2017). Second, "churches, their integrated auxiliaries, and conventions or associations of churches," as well as "the exclusively religious activities of any religious order," 26 U.S.C. § 6033(a)(3)(A)(i), (iii), were exempt from the contraceptive mandate for religious reasons. 78 Fed. Reg. 39,870, 39,874 (July 2, 2013). Other religious employers outside this narrow religious exemption, such as the Little Sisters, still had to comply with the mandate. *Id.*

All told, these statutory and regulatory exemptions relieve the employers of tens of millions of employees of any obligation to do anything to comply with the contraceptive mandate—whether or not they have any religious objections to providing such coverage. If employees of exempt employers want to obtain cost-free contraceptive coverage, they must obtain it through alternative means, including through the use of state-funded health care programs. These exemptions have been in place for more than four years, and they apply to tens of millions more people than the IFR at issue here. Yet Pennsylvania never filed suit to challenge these exemptions.

## C.  The Regulatory Mechanism for Complying with the Mandate

Until recently, religious employers such as the Little Sisters were not exempt from the contraceptive mandate. They needed to either comply with the mandate or pay large fines. *See* 78 Fed. Reg. at 39,874 (exemption limited to small subset of religious employers). The Little Sisters and other religious employers had sought an exemption but in 2013 HHS refused to grant it and instead offered them only an alternative

4

regulatory mechanism for compliance. *See* 78 Fed. Reg. at 39,896. Under that approach, religious entities like the Little Sisters were required to comply with the mandate by signing a required notice to its insurer, third-party administrator (TPA) or the government. If a religious objector complies in this manner, the government would take steps to use their health plan to distribute contraceptives, including use its "insurance coverage network," its "coverage administration infrastructure," its information to "verify . . . identit[ies]," and its systems to "provide formatted claims data." 80 Fed. Reg. 41,318, 41,328-29 (July 14, 2015). In such circumstances, the religious objector would be "considered to comply" with the mandate, 78 Fed. Reg. 39,879.

Unsurprisingly, nonexempt religious employers who hold sincere religious objections to facilitating access to contraception found little solace in this so-called "accommodation" of their religious beliefs. After all, these organizations do not merely object to directing or paying for the inclusion of contraceptive coverage in their plans; they object to being forced to facilitate the provision of contraceptive coverage through their own plan infrastructure as well. Mother Superior Marie Vincente Decl. ¶ 37. Being forced to comply with the contraceptive mandate via a scheme that requires them to effectively authorize others to take over their health plans to provide coverage is thus no more compatible with their religious beliefs than being forced to comply by writing the coverage into their plans themselves. *Id.* Numerous nonprofit religious employers brought lawsuits challenging application of the contraceptive mandate to them as, among other things, a violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb ("RFRA"). *See* Pet'rs' Br. at iii-iv, *Little Sisters of the Poor Home*

5

*for the Aged, et al. v. Burwell*, 794 F.3d 1151 (10th Cir. 2015) (No. 15-105).

### D. Intervenor's Lawsuit, Supreme Court Orders, and the Interim Final Rule

One of those lawsuits is a class action on behalf of hundreds of Catholic employers who provide health benefits to their employees through the Christian Brothers church plan, including the Little Sisters. Facing the prospect of large penalties starting on January 1, 2014, the plaintiffs filed suit on September 24, 2013, and filed a motion for preliminary injunction one month later, on October 24. *See* Dkts. 1 & 15, *Little Sisters of the Poor v. Sebelius*, No. 13-cv-2611 (D. Colo.). The district court denied the motion on December 27, just five days before the start of the penalties. *Id.* at Dkt. 52. The Little Sisters filed an emergency appeal to the Tenth Circuit on the same day, and moved for an injunction pending appeal on December 28. *Id.* at Dkt. 53 & Dkt. 54, *see also* Emergency Motion for Injunction Pending Appeal, *Little Sisters of the Poor v. Burwell*, No. 13-1540 (10th Cir. Dec. 28, 2013). The Tenth Circuit denied the motion on December 31, hours before the fines were set to begin. *See* Order, *Little Sisters of the Poor v. Burwell*, No. 13-1540 (10th Cir. Dec. 31, 2013).

That evening, the Little Sisters filed an emergency application for an injunction under the All Writs Act with the Supreme Court. Shortly before midnight, Justice Sotomayor granted a temporary injunction pending the receipt of a response brief from the defendants. Order, *Little Sisters of the Poor v. Sebelius*, No. 13A691 (Sup. Ct. Dec. 31, 2013). On January 24, 2014, the Supreme Court granted a rare injunction pending appeal, without any noted dissent. *Little Sisters of the Poor v. Sebelius*, 134 S. Ct. 1022 (2014). The Court's order provided that:

> If the employer applicants inform the Secretary of Health
> and Human Services in writing that they are non-profit or-
> ganizations that hold themselves out as religious and have
> religious objections to providing coverage for contraceptive
> services, the respondents are enjoined from enforcing
> against the applicants the challenged provisions of the Pa-
> tient Protection and Affordable Care Act and related regu-
> lations pending final disposition of the appeal. . . . To meet
> the condition for injunction pending appeal, applicants
> need not use the form prescribed by the Government and
> need not send copies to third-party administrators.

*Id*.

The Tenth Circuit subsequently heard the Little Sisters' appeal and upheld the denial of their injunction. *Little Sisters of the Poor Home for the Aged, Denver, Colo. v. Burwell*, 794 F.3d 1151 (10th Cir. 2015). The Little Sisters immediately petitioned for certiorari, which the Supreme Court granted, consolidating their case with several others. *See Zubik v. Burwell,* 136 S. Ct. 1557 (2016).

A unanimous Supreme Court directed the government to reconsider its regulation and "arrive at an approach going forward that accommodates petitioners' religious exercise while at the same time ensuring that women covered by petitioners' health plans receive full and equal health coverage, including contraceptive coverage." *Id.* at 1560 (citation and internal quote omitted). The Supreme Court ordered that "the Government may not impose taxes or penalties on petitioners for failure to provide the relevant notice." *Id.* at 1561. That order is still in place.

The Little Sisters' case was remanded to the Tenth Circuit, where litigation was stayed, and has remained so while the government reconsiders the exemptions to the HHS Mandate. *See*, *e.g.*, Order, *Little Sisters of the Poor v. Hargan*, No. 13-1540 (10th Cir. June 27, 2016) (ordering parties to file periodic status reports).

On May 4, 2017, President Trump signed an Executive Order related to religious

liberty. Exec. Order No. 13,798, 82 Fed. Reg. 21,675 (May 4, 2017). The Executive Order instructed HHS to "consider issuing amended regulations, consistent with applicable law, to address conscience-based objections to the preventive-care mandate promulgated under section 300gg-13(a)(4) of title 42, United States Code." *Id.*

On October 6, HHS complied with that executive order by issuing the Interim Final Rule ("IFR") at issue in this lawsuit. 82 Fed. Reg. 47,792, 47,795-96 (Oct. 13, 2017). The IFR protects those with religious objections, and expressly refers to the Little Sisters' lawsuit and the Supreme Court decision in their case as the impetus for the regulatory change: "Consistent with the President's Executive Order and the Government's desire to resolve the pending litigation and prevent future litigation from similar plaintiffs, the Departments have concluded that it is appropriate to reexamine the exemption and accommodation scheme currently in place for the Mandate." 82 Fed. Reg. at 47,799; *see also id.* at 47,798 (describing Little Sisters' lawsuit and *Zubik* decision). HHS stated that "Good cause exists to issue the expanded exemption in these interim final rules in order to cure such violations (whether among litigants or among similarly situated parties that have not litigated), to help settle or resolve cases, and to ensure, moving forward, that our regulations are consistent with any approach we have taken in resolving certain litigation matters." 82 Fed. Reg. at 47,814.

In addition to the multiple previous rounds of public comment on the contraceptive mandate and its exemptions, the IFR set a sixty-day time period for comments, which "provides the public with an opportunity to comment on whether these regulations expanding the exemption should be made permanent or subject to modification."

8

82 Fed. Reg. at 47,815. That comment period will end on December 5. In the six weeks since the IFR was issued, the Little Sisters and the government have been in negotiations to resolve the case, but have not yet reached an agreement.

**E. This Lawsuit.**

Just 5 days after the IFR was issued, Pennsylvania filed this lawsuit, seeking an injunction against the religious exemption granted by the new rule and the re-imposition of penalties on the Little Sisters and other religious objectors. Dkt. 1. To our knowledge, seven other lawsuits have been filed nationwide. In only two of those lawsuits, including this one, have the plaintiffs filed motions for preliminary injunctive relief. Plaintiffs appear to believe that there is a political aspect to this litigation, as they have not sought interim injunctive relief in any cases assigned to Republican-appointed judges.

Although it had failed to intervene in the prior four years of litigation—in which virtually every religious objector had received at least a preliminary injunction protecting them from having to provide contraceptive coverage—Pennsylvania moved for a preliminary injunction here. Pennsylvania does not identify even a single actual employer who has been covering contraception and is expected to stop on January 1; nor does Pennsylvania identify a single actual person who has had such coverage and expects to lose it on January 1. Nevertheless, Pennsylvania seeks an injunction in short order based on claims that the IFR violates the Administrative Procedures Act and that the religious exemptions contained in the IFR violate the Establishment and Equal Protection Clauses of the Constitution. Pennsylvania seeks a declaratory judg-

ment that the religious exemptions in the IFR are unlawful, and a nationwide injunction against enforcement of the IFR. If Pennsylvania is successful, the Little Sisters will lose the exemption granted by the IFR, and risk being forced to choose between violating their sincerely held religious beliefs or paying almost $2.5 million in annual fines. Mother Superior Marie Vincente ¶ 43.

## STANDARD OF REVIEW

In evaluating a motion to intervene, district courts are required to accept as true the "non-conclusory and well-pleaded" allegations made by the proposed intervenor. *Olympic Sports Data Servs., Ltd. v. Maselli,* 2008 WL 5377626, at *2 (E.D. Pa. Dec. 22, 2008). *See also Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995); *Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 819 (9th Cir. 2001). In determining whether intervention is appropriate, courts are to remember "the elasticity that Rule 24 contemplates," with "pragmatism [being] a substantial factor that must be considered." *Kleissler v. U.S. Forest Service*, 157 F.3d 964, 970 (3d Cir. 1998). That is because the "central purpose" of Rule 24 is "to *allow* intervention by those who might be practically disadvantaged by the disposition of the action." *Id.* (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1908, at 301 (1986)) (emphasis added).

Additionally, under Rule 24(b)'s permissive intervention, Courts are authorized to "permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact," as long as the intervenor has made a "timely motion," Fed R. Civ. P. 24(b), and has "an independent basis of subject matter jurisdiction," *In re Linerboard Antitrust Litigation*, 333 F. Supp. 2d 333, 338 (E.D. Pa. 2004).

## ARGUMENT

### I. The Little Sisters should be granted intervention as of right.

The Little Sisters satisfy all the requirements for intervention as of right. Federal Rule of Civil Procedure 24(a)(2) permits intervention as of right if: "the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Wallach v. Eaton Corp.*, 837 F.3d 356, 372 n.18 (3d Cir. 2016) (quoting *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)). These "requirements are intertwined," though "each must be met." *Harris,* 820 F.2d at 596 (3d Cir. 1987). Yet, "a very strong showing that one of the requirements is met may result in requiring a lesser showing of another requirement." *Id.* at 596 n.6. The Little Sisters meet each of the four criteria and should be allowed to intervene as a matter of right.

### A. The Little Sisters' motion is timely.

In determining whether a motion to intervene is timely, the court considers "the totality of the circumstances arising from three factors": (1) the stage of the proceeding, (2) the prejudice to other parties, and (3) the reason for and length of any delay. *Wallach*, 837 F.3d at 371. "These three factors are necessarily bound up in one another." *Id.* Further, the court maintains "a general reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to intervene." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare*, 701 F.3d 938, 949 (3d Cir. 2012). For purposes of this timeliness inquiry, two months after the filing of a lawsuit is still considered "a relatively short period." *Id.* at 950. *See also Wallach*, 837 F.3d at 371 (holding that the district court

abused its discretion by denying motions to intervene as untimely when the motion to intervene came two months after the potential intervenors were put on notice). And courts regularly find intervention motions to be timely even when filed well after that. *See, e.g.*, *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995) (four years); *W. Goshen Sewer Auth. v. U.S. E.P.A.*, 2013 WL 3914481 (E.D. Pa. July 30, 2013) (ten months); *Thompson v. Horsham Twp.*, 2008 WL 2389258, at *2 (E.D. Pa. June 10, 2008) (four months).

Here, this case was filed only 41 days ago, defendants have not yet filed any answer, and plaintiffs' preliminary injunction motion was filed just 19 days ago. Given Intervenors' near-immediate response to defend their interests while this case is still at the earliest possible stage, there can be no prejudice to the existing parties. *See Wallach*, 837 F.3d at 378 (finding "there was no significant delay from which prejudice could stem"); *Benjamin ex rel. Yock*, 701 F.3d at 951 (concluding that since "Appellees agree that the intervention motions were filed in a timely fashion . . . [the court] d[id] not see how they could suffer any real prejudice"); *United States v. Territory of Virgin Islands*, 748 F.3d 514, 524 (3d Cir. 2014) (observing that "[c]ourts have recognized that prejudice *can* result when a party seeks to intervene at a *late* point in litigation," there 28 years into the case) (emphasis added). Rule 24(a)(2)'s timeliness requirement is satisfied.

## B. The Little Sisters have a protectable interest in not being forced to choose between violating their faith and paying crippling fines.

The Little Sisters also have a significant protectable interest in this litigation—in fact, theirs is more significant and concrete than that of Pennsylvania. For purposes of Rule 24(a)(2), "the applicant must have an interest 'relating to the property or

12

transaction which is the subject of the action' that is 'significantly protectable.'" *Kleissler*, 157 F.3d at 969 (quoting *Donaldson v. United States,* 400 U.S. 517, 531 (1971)). A significantly protectable interest has been defined as "one that is specific to those seeking to intervene, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Benjamin ex rel. Yock*, 701 F.3d at 951. And the "polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote." *Kleissler,* 157 F.3d at 972.

The interest here is direct and concrete. The federal government candidly admits that the IFR was prompted by the Little Sisters' case and the Supreme Court order they obtained. *See* 82 Fed. Reg. 47,792-01. Simply put the IFR is designed to protect them. The Little Sisters have a direct interest in the validity of that protection. Yet Pennsylvania's lawsuit seeks to enjoin the IFR. Worse yet, Pennsylvania asks this Court to declare that not only the IFR itself, but any similar exemption arrangement protecting the Little Sisters would violate the Establishment and Equal Protection Clauses. *See* Compl., Dkt. 1 ¶¶ 23, 146, 158 (asking the Court to declare that exemptions from the contraceptive mandate are unlawful, and to vacate them and permanently enjoin enforcement of them). This amounts to both an attack on the Supreme Court's *Zubik* decision and a challenge to any exemption scheme that would fully protect the Little Sisters. The Little Sisters have been in court for more than four years fighting to establish their legal right to just such an exemption.

In sum, the Little Sisters' interest in this lawsuit is a textbook example of a protectable interest: it "is specific to those seeking to intervene," since it involves a rule expressly motivated by the Little Sisters' lawsuit; it "is capable of definition," since it

13

is the same right the Little Sisters have litigated for years to protect; and that interest "will be directly affected in a substantially concrete fashion by the relief sought," since the relief sought is an injunction against the rule and a declaration proclaiming that and all similar relief unlawful. *Benjamin ex rel. Yock*, 701 F.3d at 951.

### C. The Little Sisters' ability to protect their interests may be impaired by the disposition of this action.

Once a court determines that a proposed intervenor has a significant protectable interest, then the question is whether there is "'a tangible threat' to the applicant's legal interest," *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992) (quoting *Harris,* 820 F.2d at 601), or whether "he or she 'will be practically disadvantaged by the disposition of the action.'" *Benjamin ex rel. Yock*, 701 F.3d at 951 (quoting *Kleissler*, 157 F.3d at 970). "This factor may be satisfied if, for example, a determination of the action in the applicants' absence will have a significant stare decisis effect on their claims, or if the applicants' rights may be affected by a proposed remedy." *Brody*, 957 F.2d at 1123.

Here, Pennsylvania seeks to have the IFR declared unconstitutional and permanently enjoined. *See, e.g.*, Dkt. 1 ¶¶ 23, 146, 158. Not only that, but Pennsylvania seeks a declaration that any religious exemption from the contraceptive mandate would violate the constitution and federal statutes. If Pennsylvania prevails, the Little Sisters will be more than just "practically disadvantaged"—not only the IFR but any other attempt to protect their rights would be subject to attack. Because the Little Sisters' "rights may be affected by a proposed remedy," this lawsuit poses a "tangible threat" to the relief the Little Sisters fought for and won. This is particularly true

here, where the proposed intervenors are the "intended beneficiaries of the challenged federal policy." *Texas v. United States*, 805 F.3d 653, 660 (5th Cir. 2015) (holding that proposed intervenors were DAPA's intended beneficiaries and therefore had a sufficient interest to intervene in a challenge to DAPA); *see also California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (permitting healthcare providers to intervene in California's lawsuit challenging a federal law because the law "provide[d] an important layer of protection" for the healthcare providers).

Nor is this a case in which intervention is inappropriate because Intervenors have an adequate alternative forum in which they can protect their interests. This lawsuit is an attack on victories the Little Sisters have won in other courts. The Third Circuit has a "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." *Brody*, 957 F.2d at 1123. It would upend this policy entirely to deny intervention to the original plaintiffs in a lawsuit that functions as a collateral attack on their rights.

### D. The Little Sisters' interests are not adequately represented by the existing parties to the action.

Finally, intervention should be granted because the Government does not adequately represent the Little Sisters' interests. The Little Sisters "burden of making that showing should be treated as minimal." *Benjamin ex rel. Yock,* 701 F.3d at 958 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)). The "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Mountain Top*, 72 F.3d at 368 (quoting *Trbovich*, 404 U.S. at 538 n.10). One ground for finding inadequate representation is a scenario where "although the applicant's interests are similar to those of a party, they diverge

15

sufficiently that the existing party cannot devote proper attention to the applicant's interests." *Territory of Virgin Islands*, 748 F.3d at 520.

Indeed, the Government and the Little Sisters have long been in conflict over these very issues. For the last four years, the Government has threatened the Little Sisters with massive fines if they continue to engage in their religious exercise. *Little Sisters of the Poor*, 794 F.3d at 1167, *vacated and remanded sub nom. Zubik*, 136 S. Ct. 1557 (noting that "a single Little Sisters home could incur penalties of up to $2.5 million per year"). And to this day, the Government and Intervenors remain adverse parties in separate litigation over the same issue. *Little Sisters of the Poor Home for the Aged v. Sebelius*, No. 1:13-cv-02611 (D. Colo. June 17, 2016), Dkt. No. 78 (vacating judgment but not entering any other judgment in the case). That is more than enough to show that HHS's representation "may be inadequate." *Mountain Top,* 72 F.3d at 368.

For instance, in *Kleissler*, environmental groups sued the Forest Service over its new logging practices. 157 F.3d at 968. Local school districts and municipalities, as well as several timber companies, sought to intervene over financial interests in logging in that area. *Id.* While noting the presumption of adequate representation by the government for the proposed intervenors, nevertheless the court reversed the district court's denial of motions to intervene. *Id.* at 972. The proposed intervenors' "comparatively light" burden of proof was met given that their "straightforward" interests did not match the government's "numerous complex and conflicting interests in matters of this nature." *Id.* at 973. Thus, the intervenors' interest "*may* become lost in the thicket of sometimes inconsistent governmental policies." *Id.* at 974 (emphasis added).

Likewise, in *Mille Lacs Band of Chippewa Indians v. State of Minnesota*, the court allowed counties and landowners to intervene in a lawsuit by Chippewa Indians against the state. The court found that there was "no presumption of adequate representation arises" since "the counties and the landowners seek to protect local and individual interests not shared by the general citizenry of Minnesota." 989 F.2d 994, 1001 (8th Cir. 1993). And intervention was allowed despite the fact that "the counties' and the landowners' proposed answers are almost identical to the answer filed by the state" because the court observed that "there is no assurance that the state will continue to support all the positions taken in its initial pleading." *Id.* Further playing into the court's decision was the worry that "if the case is disposed of by settlement rather than by litigation, what the state perceives as being in its interest may diverge substantially from the counties' and the landowners' interests." *Id.*

Here we have a situation akin to *Kleissler* and *Mille Lacs.* The Government's policies in this area have been anything but "static," and there is no guarantee it will adhere to its newfound views, *Kleissler*, 157 F.3d at 974, or even "support all the positions taken it its initial pleading." *Mille Lacs*, 989 F.2d at 1001. "[C]olored by its view of the public welfare," as compared to the Intervenor's "more parochial" interests, the Government has "numerous complex and conflicting interests in matters of this nature." *Kleissler,* 157 F.3d at 972, 973. Thus, the Government's interest is not identical to Intervenors' interest in protecting their 175-year-old religious ministry from crippling government-imposed fines. To the contrary, the Government is expressly "balanc[ing]" the Little Sisters' interests against "the Government's interest in ensuring coverage for contraceptive and sterilization services." 82 Fed. Reg. at

17

47,793. The Government is also considering its broader interests in public health, implementation of the Affordable Care Act, the cost of its regulations, and the potential impact on other Government programs. *See, e.g.*, 82 Fed. Reg. at 47,803 (considering the impact on other programs); 47821 (considering the cost of the exemption). Thus, there is a real risk that the Little Sisters' "straightforward" interests "may become lost in the thicket of sometimes inconsistent governmental policies," driven by the Government's "numerous complex and conflicting interests" stemming from the public welfare writ-large. *Kleissler*, 157 F.3d at 974.

## II. Alternatively, proposed Intervenors should be permitted to intervene under Rule 24(b).

Even assuming the Court denies intervention as of right, it should grant permissive intervention under Rule 24(b). Courts are authorized to "permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact," as long as the intervenor has made a "timely motion," Fed R. Civ. P. 24(b), and has "an independent basis of subject matter jurisdiction," *Linerboard*, 333 F. Supp. 2d at 338.

The Little Sisters' interest in protecting the IFR presents common questions of law and fact with those of the existing parties. As noted above, this motion is timely and intervention at this early stage will not prejudice the current parties. The significance of the Little Sisters' interests in the subject matter of this litigation outweighs any marginal additional burden that would be caused by intervention. As noted above, this motion is timely and intervention will neither require any change to existing deadlines nor prejudice the current parties. The significance of the proposed Intervenor's interests in the subject matter of this litigation outweighs any marginal

additional burden that would be caused by intervention. *See United States v. City of Los Angeles*, 288 F.3d 391, 404 (9th Cir. 2002) (reversing denial of permissive intervention, noting that "'streamlining' the litigation . . . should not be accomplished at the risk of marginalizing those . . . who have some of the strongest interests in the outcome"). Thus, even if the Court concluded that the Little Sisters cannot intervene as of right, it should nonetheless permit intervention under Fed. R. Civ. P. 24(b).

## CONCLUSION

For the foregoing reasons, the Little Sisters motion to intervene should be granted.

Dated: November 21, 2017        Respectfully submitted,

             /s/ Nicholas M. Centrella
             Nicholas M. Centrella
             Conrad O'Brien PC
             1500 Market Street, Suite 3900
             Philadelphia, PA 19102-2100
             Telephone: (215) 864-8098
             Facsimile: (215) 864-0798
             ncentrella@conradobrien.com

             Mark Rienzi*
             Lori Windham*
             The Becket Fund for Religious Liberty
             1200 New Hampshire Ave. NW, Suite 700
             Washington, DC 20036
             Telephone: (202) 955-0095
             Facsimile: (202) 955-0090

             *Counsel for Proposed Intervenor*
             *\*Admission proc hac vice pending*