# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DONALD J. TRUMP, in his official )<br>capacity as President of the United States; )<br>ERIC D. HARGAN, in his official )<br>capacity as Acting Secretary of Health and )<br>Human Services; UNITED STATES )<br>DEPARTMENT OF HEALTH AND )<br>HUMAN SERVICES; STEVEN T. )<br>MNUCHIN, in his official capacity as )<br>Secretary of the Treasury; UNITED )<br>STATES DEPARTMENT OF THE )<br>TREASURY; RENE ALEXANDER )<br>ACOSTA, in his official capacity as )<br>Secretary of Labor; and UNITED STATES )<br>DEPARTMENT OF LABOR, )<br>)<br>Defendants. )<br>_____) | Civil Action No. 2:17-cv-04540 (WB) |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

After years of litigation, multiple rounds of public comment, and tens of thousands of individual comments on different iterations of the exemption and accommodation at issue here, the Agencies could not find a way to amend the accommodation to resolve all litigation. *See* FAQs About ACA Implementation Part 36 (Jan. 9, 2017). So they made a policy choice, grounded in respect for religious liberty, to render the accommodation process optional and to expand the existing exemption. Far from "allow[ing] virtually any employer to unilaterally opt out of its legal obligation to provide its employees and those on their plans with contraceptive coverage," Pl.'s Opp'n at 1 (ECF No. 37), the Rules' expanded exemptions protect a narrow class of sincere religious and moral objectors from being forced to facilitate contraceptive coverage in conflict with their beliefs.

The Commonwealth's challenge to these Rules must be dismissed. The Commonwealth has identified no injury in fact from Rules that do not apply to it and that do not affect *any* identified state residents. Moreover, it cannot assert the rights of its citizens against the federal government. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 610 n.16 (1982). Venue is also not proper in this district; the Commonwealth resides in Harrisburg, not here. It has so argued in numerous cases, and its contrary assertions here are at odds with the text of the venue statute, which provides that an "entity" plaintiff resides where it maintains its principal place of business—*i.e.*, the Middle District.

Even if there were no jurisdictional bars to this case proceeding, the Commonwealth has failed to state any plausible claim for relief. The Agencies were not required to go through notice and comment under the APA before issuing the Rules, and the Agencies reasonably exercised their rulemaking authority to guide HRSA's discretion in prescribing required services and to craft a response to problems caused by the Mandate. The Rules neither discriminate on the basis of sex nor run afoul of the Establishment Clause. Indeed, the Rules place religious and moral objections on similar footing. Accordingly, the Complaint should be dismissed.

**ARGUMENT**

I.     **PENNSYLVANIA LACKS STANDING.**

The Commonwealth's opposition only confirms its lack of standing. It does not—and could not—contend that the challenged Rules apply to the Commonwealth, and it has not supported any conjecture about "direct financial harm" the state would suffer with specific allegations that *any* employer plans to stop providing contraceptive coverage to state residents.[1] *See* Pl.'s Opp'n at 2. It also has not alleged that the employees of any such employer would seek access to contraceptive coverage and be unable to secure it through, *e.g.*, a family member's plan.

Even if the Commonwealth had sufficiently alleged a loss of coverage to its residents as a result of the Rules, its alleged harms from that loss of coverage are speculative. *See id*. at 3. Plaintiff theorizes that these hypothetical employees would qualify for and seek coverage through state-funded programs that provide access to contraceptives for some low-income residents, but that theory piles speculation upon speculation. *Id*. at 2-3. It is not a plausible allegation of injury to the Commonwealth, much less an injury that is "*certainly* impending." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992). Even more speculative is the assertion that these employees will forego contraception entirely and have unplanned pregnancies, the costs of which would be borne by the state, Pl.'s Opp'n at 2-3, even though such pregnancies would presumptively be otherwise covered by the employees' health plans. And conclusory allegations that a state's budget or tax revenues will be harmed in some general way by a federal policy are not sufficient to support state standing; otherwise, any state could challenge any federal policy. MTD at 6-8 & n.4 (ECF No. 16); *see also Wyoming v. U.S. Dep't of the Interior*, 674 F.3d 1220, 1234 (10th Cir. 2012).

Assuming *arguendo* that the Commonwealth had plausibly alleged a loss of contraceptive coverage to its residents and a subsequent drain on state resources, that "self-inflicted injur[y]"

---

[1] The only specific example the Commonwealth provided of an employer planning to stop providing contraceptive coverage to Pennsylvania residents was Notre Dame, PI Mot. at 13 n.9 (ECF No. 8-2), which has since announced that its third-party administrator will provide contraceptive coverage to its health plan members at no cost. *See* MTD at Exs. A, B.

would not be a cognizable injury traceable to the challenged regulations. *See* MTD at 8. Plaintiff relies on a Fifth Circuit decision to argue that "the law is clear that an injury cannot be deemed self-inflicted" when a party must either "full[y] compl[y] with a challenged action" or "drastic[ally] restructure" a state program. Pl.'s Opp'n at 4 (citing *Texas v. United States*, 86 F. Supp. 3d 591, 619 (S.D. Tex.), *aff'd*, 809 F.3d 134 (5th Cir. 2015), *aff'd by an evenly divided Court*, 136 S. Ct. 2271 (2016) (per curiam)).[2] But here, the Commonwealth is not required to comply with anything. The Rules do not apply to the state or its programs.

Finally, Plaintiff cannot escape binding precedent establishing that Plaintiff may not attempt as *parens patriae* to enforce the rights of its citizens against the federal government. *See* MTD at 8-9. Notwithstanding Plaintiff's two out-of-circuit district court cases, Pl.'s Opp'n at 4-5, Third Circuit precedent is clear. In *Pennsylvania v. Porter*, the Third Circuit observed that "the Commonwealth may bring a parens patriae action in [district courts] to enforce the fourteenth amendment," but expressly distinguished a prior case, *Pennsylvania v. Nat'l Ass'n of Flood Insurers*, 520 F.2d 11 (3d Cir. 1975), on the ground that "the Commonwealth was in that case attempting as parens patriae to advance the interests of Pennsylvania flood victims against instrumentalities of the United States." 659 F.2d 306, 317 (3d Cir. 1981) (en banc). Such an attempt could not proceed because "[i]t has been settled since *Massachusetts v. Mellon*, [262 U.S. 447, 486 (1923)], that a state may not attempt as parens patriae to enforce rights of its citizens in respect of their relations with the Federal Government." *Id.* (citation omitted). *Porter* did not limit this conclusion to actions in which a state was challenging a federal statute, and indeed, *Flood Insurers* did not involve only statutory claims. *See* 520 F.2d at 15; *see also Maiden Creek Assocs. v. U.S. Dep't of Transp.*, 823 F.3d 184, 193 (3d Cir. 2016). Subsequent decisions have not undermined this longstanding rule. *See Massachusetts v. EPA*, 549 U.S. 497 (2007) (finding an

---

[2] "[I]t's true the Supreme Court granted certiorari in *Texas v. United States*, but then deadlocked 4–4, and as a result the Fifth Circuit's decision stands, though its soundness has been questioned." *Robledo-Soto v. Lynch*, 845 F.3d 834, 836 (7th Cir. 2017) (internal citation omitted). Because the Fifth Circuit's decision was affirmed by an equally divided Supreme Court, the Court's decision is not binding outside of that case. *See Durant v. Essex Co.*, 74 U.S. (7 Wall.) 107, 113 (1868).

alleged concrete, direct injury to the state and not relying on a *parens patriae* theory); *Maryland People's Counsel v. FERC*, 760 F.2d 318, 320 (D.C. Cir. 1985) (reaffirming that "[a] State does not have standing as *parens patriae* to bring an action against the Federal Government" and allowing the case to proceed only because Maryland did "not rely exclusively upon the general doctrine of *parens patriae*, but appeal[ed] to a statutory conferral of standing by the Natural Gas Act"). Pennsylvania can make no similar appeal, and its suit may not proceed.

## II. VENUE IS NOT PROPER IN THIS DISTRICT.

Pennsylvania argues that venue is appropriate in this District because (1) it resides here, and (2) "a substantial part of the events or omissions giving rise to the claim occurred" here. 28 U.S.C. §1391(e)(1)(B). Neither argument is valid.

The Commonwealth cannot distinguish the numerous cases in which it has argued that it resides in the Middle District, *see* MTD at 10, by claiming that those cases "involve[d] state agencies and officers," whereas in this case, "the plaintiff is the state itself." Pl.'s Opp'n at 6. To begin, one of those cases involved the Commonwealth itself as a defendant, *Gaskin v. Pennsylvania*, No. 94-4048, 1995 WL 154801, at *1 (E.D. Pa. Mar. 30, 1995), so Pennsylvania is judicially estopped from arguing otherwise. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Moreover, the distinction is illusory: if the Commonwealth's agencies and officials reside in the Middle District, then no part of the state government resides in this District. Pennsylvania's only real authority for the proposition that "a state resides throughout its sovereign borders" is a single district court case from another circuit—*Alabama v. U.S. Army Corps of Eng'rs*, 382 F. Supp. 2d 1301, 1327-29 (N.D. Ala. 2005). *See* Pl.'s Opp'n at 6.[3] But that decision is unpersuasive: it both pre-dates and is at odds with the current text of the venue statute. That statute provides that an "entity" plaintiff suing the federal government may sue only where it maintains its "principal place of business." 28 U.S.C. § 1391(c)(2); *see also id*. § 1391(e)(1)(C). Courts have applied the "principal place of business" language to governmental entities. *Brodt v. Cty. of Hartford*, 10 F.

---

[3] Pennsylvania also cites a treatise, but the treatise relies solely on the *Alabama* case. 14D Wright & Miller, *Fed. Prac. & Proc*. § 3815 n.38 (4th ed. 2013).

Supp. 3d 198, 201 (D.D.C. 2014); *Springle v. City of New York*, No. 11-8827, 2013 WL 592656, at *8 (S.D.N.Y. Feb. 14, 2013). The Commonwealth's principal place of business—*i.e.*, its "headquarters," *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010)—is Harrisburg.

Pennsylvania fares no better in arguing that venue lies under the "events or omissions" prong. It cites several out-of-circuit district court opinions, including decisions addressing a previous version of the statute, for the proposition that a plaintiff can sue where it feels the effects of a defendant's actions. Pl.'s Opp'n at 6-7. But numerous courts in this district have held otherwise. *See, e.g.*, *Chester v. Beard*, No. 07-4742, 2008 WL 2310946, at *8 (E.D. Pa. June 2, 2008); *Loeb v. Bank of Am.*, 254 F. Supp. 2d 581, 587 (E.D. Pa. 2003); *Gaskin*, 1995 WL 154801, at *1. Moreover, the statute provides that venue is appropriate where the events or omissions "occurred." 28 U.S.C. § 1391(e)(1)(B). So even if "effects" counted as "events or omissions" giving rise to the suit, none of the speculative future effects of these Rules, *see* MTD at 5-8, has yet "occurred" here. *See Carr v. United States*, 560 U.S. 438, 448 (2010) ("Congress' use of a verb tense is significant in construing statutes[.]"). And the "events" and "omissions" that have already occurred were in Washington, D.C., where the Rules were issued.

### III. PENNSYLVANIA HAS FAILED TO STATE A CLAIM.
#### A. The Rules Comply Fully with the APA's Procedural Requirements.

Plaintiff's defense of its procedural APA challenge rests on a single out-of-circuit district court case that cannot bear such weight. *See* Pl.'s Opp'n at 8-9 (citing *Coalition for Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10, 18-19 (D.D.C. 2010)). As the Agencies explained when issuing the 2010, 2011, and 2014 IFRs, they have express authority to issue "any interim final rules *as the Secretar[ies] determine[]* are appropriate"—a different statutory standard than the good cause standard specified in the APA itself. *See* 26 U.S.C. § 9833; 29 U.S.C. § 1191c; 42 U.S.C. § 300gg-92; *cf. Real Alternatives, Inc. v. Burwell*, 150 F. Supp. 3d 419, 427 n.6 (M.D. Pa. 2015) (noting that APA notice-and-comment requirements did not apply to the 2011 IFR that was issued under this express statutory authority). That Congress "has specifically authorized the Secretaries to promulgate interim final rules," at a minimum, "provides support towards a finding of 'good cause'

5

to proceed without notice and comment," *Coalition for Parity*, 709 F. Supp. 2d at 20, as the Agencies also found existed here, 82 Fed. Reg. 47,792, 47,814-15 (Oct. 13, 2017); 82 Fed. Reg. 47,838, 47,855-56 (Oct. 13, 2017). And even if the lack of formal notice-and-comment was error, it was harmless. Pennsylvania bears the burden of showing prejudice,[4] but cannot do so. It has had opportunities to comment on the scope of the exemptions and accommodations during multiple prior rounds of notice and comment, and the Agencies already received and considered arguments raising the issues raised by Plaintiff in its Complaint here. The Rules also provided an opportunity for comments before final rules will be issued.

**B. The Rules Comply Fully with the APA's Substantive Requirements.**

    *1.    The Rules Do Not Violate the Affordable Care Act.*

The Commonwealth's argument that the Rules violate the Affordable Care Act is puzzling. The Commonwealth attacks Defendants for considering "implicit" factors like provisions that "appear[] in *other laws*" in attempting to implement the ACA. *See* Pl.'s Opp'n at 11. But the law is clear that Agencies must follow not only explicit and implicit statutory factors in the ACA to survive an arbitrary and capricious challenge, *see Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971), they must follow *all* the laws, including, to Plaintiff's apparent consternation, RFRA. The Agencies are not bound by Congress's failure to enact a proposed "conscience clause." S*ee* Pl.'s Opp'n at 11. Such proposals can be defeated for any number of reasons, including "that the existing legislation already incorporated the offered change." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 187 (1994).[5] The Supreme

---

[4] Plaintiff incorrectly relies on *United States v. Reynolds*, 710 F.3d 498 (3d Cir. 2013), *see* Pl.'s Opp'n at 9-10, where the government bore the burden of showing any error was harmless "because of the liberty interest at stake in a criminal proceeding." *Reynolds*, 710 F.3d at 515. Moreover, the Agencies have provided "evidence that possible objections to [their] final rules have been given sufficient consideration," *id.* at 516 (quoting *Shell Oil Co. v. EPA*, 950 F.2d 741, 752 (D.C. Cir. 1991)), and the exemption and accommodation at issue here certainly have been "tested via exposure to diverse public comment," *id.* at 517, through the Agencies' receipt and review of more than 100,000 public comments on multiple occasions on these issues. 82 Fed. Reg. at 47,814.

[5] *See also* 158 Cong. Rec. S485 (daily ed. Feb. 9, 2012) (Sen. Reid) ("They are talking about first amendment rights, the Constitution. I appreciate that. But that is so senseless. This debate that is going on dealing with this issue, dealing with contraception, is a rule that has not been made final yet. There is no final rule. Let's wait until there is at least a rule we can talk about.").

6

Court has accordingly counseled that such "proposals are a particularly dangerous ground on which to rest an interpretation of a prior statute." *Id*. (citation omitted).

   2.   *The Rules Are Not Arbitrary and Capricious.*

Plaintiff asserts that the Rules are arbitrary and capricious because they "frustrate—rather than advance—the purposes of the Women's Health Amendment," and that it is Congress, not Plaintiff, who has required *no* exemption to the requirement to cover contraceptive care. *See* Pl.'s Opp'n at 11-12. But that argument is belied by the statute. If Congress had wished to provide such a mandate, it could have written the requirement for contraceptive coverage into the ACA. It did not. *See* § 300gg-13(a)(4). Instead, it gave *HRSA* the discretion to determine the types of preventive care and screenings required. The Agencies have provided in detail the valid rationales for their actions. *See* PI Opp'n at 32 (ECF No. 15). That the Rules do not reflect Plaintiff's preferred policy does not render the Agencies' actions arbitrary or capricious.

   3.   *RFRA Requires the Religious Exemption Rule.*

Plaintiff disputes the Agencies' conclusion that RFRA requires the Religious Exemption Rule. Pl.'s Opp'n at 12-13. None of its arguments holds water.[6] First, Plaintiff argues that the Court in *Hobby Lobby* held that the government has a compelling interest in requiring objecting entities to provide contraceptive coverage. Not so. The majority and concurring opinions assume, but do not decide, that such an interest exists. *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2780, 2785-86 (2014). In any case, in *Hobby Lobby*, the government argued in favor of a compelling interest. Here the Agencies have now found that there is no compelling interest to mandate contraceptive coverage for certain employers with sincerely-held religious or moral objections, and we are aware of no case finding a compelling interest under RFRA when the government has not asserted that it has a compelling interest.[7] Second, Plaintiff asserts that *Real*

---

   [6] Moreover, as the Agencies explained in their opposition to the preliminary injunction motion, even if the Rules are not required under RFRA, they are permitted. PI Opp'n at 42-44.

   [7] The Supreme Court has also cautioned against adding votes from concurring and dissenting opinions, as the Commonwealth suggests, to create a holding that never existed. *See United States v. Morrison*, 529 U.S. 598, 624 (2000).

*Alternatives, Inc. v. HHS*, 867 F.3d 338 (3d Cir. 2017), held that the accommodation does not impose a substantial burden on religion. This too is incorrect. The panel's statement is *dicta*, because the case before it did not question whether the accommodation imposed a substantial burden on objecting employers or schools. *Id.* Rather, the panel determined that the accommodation imposed no substantial burden on *employees*—a claim "distinct from an *employer's* RFRA claim objecting to the mandated provision of contraceptive services that was found to be meritorious in [*Hobby Lobby*]." *Id.* at 355 & n.17 (emphasis added). Finally, there is ample justification for extending the exemption to publicly-traded companies, *Hobby Lobby*, 134 S. Ct. at 2768-69 (explaining that "[n]o known understanding of the term 'person' includes *some* but not all corporations"), though they are unlikely to invoke it, *id.* at 2769.

**C. The Rules Do Not Violate Title VII or the Pregnancy Discrimination Act.**

Plaintiff argues that the Rules violate Title VII—and therefore, the APA—because they "disproportionately harm[] women." Pl.'s Opp'n at 13. It relies entirely on a disparate impact theory of liability, eschewing any claim of disparate treatment. *Id*. As an initial matter, Pennsylvania never addresses the threshold flaw with its claim: APA relief is not available because, if the Title VII argument had any merit, an adequate alternative remedy would be available in the form of a Title VII suit against allegedly discriminating employers. *See Wash. Legal Found. v. Alexander*, 984 F.2d 483, 486 (D.C. Cir. 1993); 5 U.S.C. § 704. Plaintiff's argument also falters on its own terms. The direct effect of the Rules is that some employers and schools may be exempted from the requirement to provide contraceptive coverage to women. But employers and schools are never required to provide such coverage to men. 42 U.S.C. § 300gg-13(a)(4). Plaintiff's issue is thus with the lines drawn by the ACA itself, not with the Rules. The Rules create no statistically disproportionate impact on women (and Pennsylvania does not argue otherwise). Nor is there any evidence that the Rules will cause unintended pregnancies, which would be the result of numerous intervening causes not attributable to the Agencies. In addition, even if there were a disparate impact, (1) the Rules are supported by the public's interest (the equivalent, in this context, of business necessity) in protecting freedom of religion and conscience,

8

which rebuts Plaintiff's prima facie case, *see id*. § 2000e-2(k)(1)(A)(i); and (2) RFRA compelled the Agencies to issue the Religious Exemption Rule notwithstanding any obligations imposed by Title VII, *id*. § 2000bb-3. PI Opp'n at 46-47.

**D. The Rules Comply Fully with the Fifth Amendment's Due Process Clause.**

Plaintiff also argues that the Rules have a disparate impact on women that establishes discriminatory intent in violation of the Fifth Amendment's Due Process Clause. Pl.'s Opp'n at 13-14. But as discussed above, the Rules do not have a disparate impact on women. In any case, as Plaintiff implicitly acknowledges, disparate impact alone does not suffice under the Fifth Amendment; Pennsylvania must demonstrate discriminatory intent. *See Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274 (1979). It has not—and cannot—do so. The Rules affect only women because the ACA did not authorize the Agencies to require contraceptive coverage for men. 42 U.S.C. § 300gg-13(a)(4). Moreover, the Rules were adopted not to discriminate against women, but to alleviate substantial burdens on the religious and moral beliefs of employers and schools that object to the provision of contraceptive coverage. 82 Fed. Reg. at 47,793; 82 Fed. Reg. at 47,839. The Agencies, of course, did not have to hypothesize that there were objectors; they needed only consider the dozens of lawsuits challenging the Mandate and the accommodation. And the operation of the Rules bears out this non-discriminatory purpose: whether a woman receives contraceptive coverage is determined not by her sex, but by the existence (or not) of a sincere religious or moral objection to the provision of contraceptive coverage by her employer or school. Thus, "[w]hen the totality of . . . actions" are considered, the Rules "remain[] what [they] purport[] to be," *Feeney*, 442 U.S. at 280: an effort to "better balance the Government's interest in ensuring coverage for contraceptive and sterilization services in relation to the Government's interests . . . [in] provid[ing] conscience protections for individuals and entities with sincerely held religious beliefs [or moral convictions] . . . ." 82 Fed. Reg. at 47,793.

**E. The Rules Comply Fully with the Establishment Clause.**

As Defendants have previously explained, the Rules are consistent with the Establishment Clause. PI Opp'n at 50-54. Contrary to Plaintiff's assertion, the Rules do not "advance[e] the

religious beliefs of employers over those of their employees," Pl.'s Opp'n at 15, as nothing in the Rules obligates women working for objecting employers to change their beliefs about contraceptives or use thereof. The Rules also are materially different from the statute at issue in *Estate of Thornton v. Caldor, Inc*., 472 U.S. 703 (1985), which "compel[led] people to act in the name of . . . religion" by requiring private employers to permit employees to take off work on their chosen Sabbath day. *Id.* at 708. The Religious Exemption Rule does not compel action by private employers, but leaves room for those private employers to exercise their religion. This lifting of a government-imposed burden on religious exercise is permitted and even encouraged by the First Amendment. *See Tex. Monthly, Inc. v. Bullock*, 489 U.S. 1, 18 n.8 (1989) (plurality opinion).

## CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint.

DATED: December 7, 2017

Respectfully submitted,

CHAD A. READLER
Principal Deputy Assistant Attorney General

ETHAN P. DAVIS
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

JOEL McELVAIN
Assistant Director, Federal Programs Branch

*/s/ Elizabeth L. Kade*
ELIZABETH L. KADE (D.C. Bar No. 1009679)
Trial Counsel
U.S. Dep't of Justice, Civil Div., Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
(202) 616-8491
Elizabeth.L.Kade@usdoj.gov

*Attorneys for Defendants*