# EXHIBIT

```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE EASTERN DISTRICT OF PENNSYLVANIA

 3

 4
     COMMONWEALTH OF                      : CIVIL ACTION
 5   PENNSYLVANIA, et al.,                :
                                          :
 6             Plaintiffs,                :
                                          :
 7         vs.                            :
                                          :
 8   DONALD J. TRUMP, et al.,             : NO. 17-4540
                                          :
 9             Defendants,                :
                                          :
10   LITTLE SISTERS OF THE POOR           :
     SAINT PETER AND PAUL HOME            :
11                                        :
               Intervenor-Defendant.      :
12

13
                            PHILADELPHIA, PA
14
                            JANUARY 10, 2019
15

16
     BEFORE:      THE HONORABLE WENDY BEETLESTONE, J.
17
                            ORAL ARGUMENT
18

19   APPEARANCES:

20              OFFICE OF THE ATTORNEY GENERAL
                COMMONWEALTH OF PENNSYLVANIA
21              BY:  MICHAEL J. FISCHER, ESQUIRE
                Chief Deputy Attorney General
22              AIMEE D. THOMSON, ESQUIRE
                Deputy Attorney General
23              1600 Arch Street, Suite 300
                Philadelphia, PA  19103
24              For the Commonwealth of Pennsylvania

25
                          (CONT.)
```

```
 1     APPEARANCES:   (CONT.)
 2
 3                    ATTORNEY GENERAL STATE OF NEW JERSEY
                      DEPARTMENT OF LAW AND PUBLIC SAFETY
 4                    BY:  GLENN J. MORAMARCO, ESQUIRE
                      Assistant Attorney General
 5                    R.J. Hughes Justice Complex
                      25 Market St. P.O. Box 112
 6                    Trenton, NJ  08625-0112
                      For the State of NJ
 7

 8                    U.S. DEPARTMENT OF JUSTICE
                      BY:  JUSTIN MICHAEL SANDBERG, ESQUIRE
 9                    REBECCA M. KOPPLIN, ESQUIRE
                      20 Massachusetts Avenue NW
10                    Room 7302
                      Washington, DC  20530
11                    For the Federal Defendants

12
                      BECKET FUND FOR RELIGIOUS LIBERTY
13                    BY:  MARK RIENZI, ESQUIRE
                      President
14                    LORI WINDHAM, ESQUIRE
                      Senior Counsel
15                    1200 New Hampshire Ave. NW, Suite 700
                      Washington, DC  20036
16                    For the Defendant Intervenor

17

18                    KATHLEEN FELDMAN, CSR, CRR, RPR, CM
                      Official Court Reporter
19                    Room 1234 - U.S. Courthouse
                      601 Market Street
20                    Philadelphia, PA  19106
                      (215)779-5578
21
            (Transcript produced by machine shorthand via C.A.T.)
22

23

24

25
```

Case 2:17-cv-04540-WB   Document 152-1   Filed 02/28/19   Page 4 of 18
105

```
 1    and Final Rules make to the existing accommodation exemption
 2    framework.  That hasn't gotten much attention.
 3             It's my understanding that the IFRs and now the
 4    Final Rules changed the level at which the exemption is to be
 5    applied.  So whereas before, the availability of the exemption
 6    was to be determined on an employer-by-employer basis, the
 7    IFRs provide that the exemption will be determined on a plan
 8    basis.
 9             MR. SANDBERG:  To my understanding, that's correct.
10             THE COURT:  And do you have any information about
11    how often an insured's health care plan sponsor will be a
12    different entity than the insured's employer?
13             MR. SANDBERG:  I don't standing up here.  It's not
14    saying the Agency doesn't.  I don't standing up here.
15             THE COURT:  Okay.  So we just got the administrative
16    record here.  The fact that I just received the administrative
17    record, do you think that that makes any difference?  Do you
18    think I need to -- that the Plaintiff should have another
19    opportunity to look at the administrative record?  Do you
20    think that we need to -- is there anything that we need to do
21    here in this court with respect to that?
22             MR. SANDBERG:  Well, I would say this.  To the
23    extent the Court, which we would think is incorrect, would
24    say, I can look to these outside declarants, these people
25    outside the Agency to determine the correctness of what the
```

1   Agency did, we think the Court's previous ruling in our motion
2   in limine which said you could rely on sort of extra record
3   information for a limited purpose -- but that limited purpose
4   did not include assessing the correctness of what the Agency
5   did.  So the only thing I would say would be if the Court were
6   inclined to say, Because I got the record just today or
7   yesterday, I'm going to rely on extra record evidence, we
8   think that would be incorrect and that, you know, if the Court
9   wants to take additional time or permit additional briefing on
10  what's in the record, we would prefer that certainly as
11  opposed to --
12          THE COURT:  Well, yes, that wasn't the question.
13          The issue is -- well, I suppose it's for the
14  Plaintiff.
15          Have you had access to the administrative record
16  before yesterday or whatever?
17          MR. FISCHER:  Your Honor, we received -- no, not
18  before.  We received it by FedEx, I believe --
19          THE COURT:  Do you think it makes a difference here?
20          MR. FISCHER:  It does certainly because I think it
21  heightens the burden on Defendants to justify their reversals
22  of position here.
23          If they're relying on what's in the administrative
24  record to justify, for instance, their reinterpretation of the
25  word "as", the fact is we have not had the chance to go

1  through and analyze exactly what they relied on.

2          Now, the only thing we found related to that,
3  someone printed out the OED definition of the word "as" two
4  weeks after the Rules were issued and they threw it to us in
5  the record, but I think it makes the burden higher on
6  Defendants.

7          I also think it may inform -- regardless of what
8  happens today, it may inform how the case proceeds and I'll
9  talk about this a little bit more when we get into
10 injunctions, but perhaps it's an argument for all parties that
11 are moving expeditiously toward a final judgment.  If there's
12 a preliminary injunction entered or if there is not, but one
13 that will give everybody the opportunity to take full account
14 of the administrative record rather than resting on a decision
15 on a PI that was the basis of a record that we have only had a
16 day to look at and not even a day, frankly --

17          THE COURT:  So do you think I can make a decision
18 without any further briefing with respect to the
19 administrative record?

20          MR. FISCHER:  Yes, I believe Your Honor can because
21 we think that the conclusions in the Rule are in many ways
22 arbitrary and capricious on their face.  We think that, for
23 instance, the reversal on benefits of contraception, which is
24 justified by a statement that they've identified, one study
25 that's ambiguous on the benefits, that by itself simply

1  doesn't carry their burden.  We think that there's enough in
2  there right now to show that the conclusions that the
3  Government's reaching are simply not justified.  The same as I
4  think with this "as" issue.
5          There's been a lot of discussion about, you know,
6  does the ACA give the Agency the authority to create
7  exemptions.  Well, they're resting the authority on the word
8  "as".  But that's the only argument I've heard as to where
9  this authority comes from.  They say, well, because it says as
10 provided for, HRSA can do more than just identify services
11 which is what HRSA did.  They're saying HRSA -- which has no
12 expertise in religious exercise identifying a burden on
13 religious beliefs -- they're saying HRSA, nonetheless, has the
14 authority to create broad-sweeping exemptions and they're
15 resting all of that on the use of the word "as".
16         So, frankly, I think it's unlikely there's anything
17 in the history of the record that will show that to be
18 justified.  On its face, I think it's, frankly, just wrong and
19 Your Honor could rule on that basis.
20         THE COURT:  Okay.  Have you got the "as" cite now?
21         MR. SANDBERG:  Yes.  The cites are the Religious
22 Rule.  It's 83 Fed. Reg --
23         THE COURT:  83 Fed. Reg.
24         MR. SANDBERG:  -- 57,540 to 41.
25         THE COURT:  57,540 to 41.

```
 1             MR. SANDBERG:  And the parallel citation in the
 2   Moral Rule, would you like that?
 3             THE COURT:  Yes.
 4             MR. SANDBERG:  83 Fed. Reg. 57,597 --
 5             THE COURT:  57,597.
 6             MR. SANDBERG:  -- to 98.
 7             THE COURT:  Okay.
 8             MR. SANDBERG:  I do want to point out, our only
 9   basis is not the word "as".
10             We've had argument here this morning, we've provided
11   other bases entirely tendentious to their only basis for --
12             THE COURT:  I understand.  I understand.  I just
13   want to focus on the "as" argument.
14             MR. SANDBERG:  And it's also entirely tendentious to
15   say that we rely on one study for the benefit.  There's -- I
16   think there's four or five pages in the Federal Register
17   regarding sort of the Agency's assessment of the efficacy of
18   contraceptives and it doesn't rely on one study.
19             THE COURT:  Okay, so let's now turn to the scope of
20   the remedy.
21             MR. SANDBERG:  Okay.
22             MR. FISCHER:  Thank you, Your Honor.
23             The states believe that the only remedy that will
24   fully address the harm that they and the residents are likely
25   to suffer is an injunction preventing the Agencies from
```

1    enforcing the Rules nationwide.  That is what the Court issued
2    before and we believe it's also warranted under the facts of
3    the Final Rules.
4           Now, the question of what remedy is appropriate
5    depends on a variety of factors.  It involves looking at the
6    nature of the violation, it involves looking at the nature of
7    the harm, it involves balancing the equities, looking at the
8    public interest.  And I think the Supreme Court's decision in
9    the -- one of your early travel ban cases where the Court
10   granted a stay of a nationwide injunction in some respects,
11   but allowed the nationwide injunction to go forward in other
12   respects, particularly with individuals who were similarly
13   situated to the Plaintiffs in that case.  So while the Court
14   stayed some aspects of the injunction, it did not say a
15   nationwide injunction was improper.
16           THE COURT:  Well, Justice Thomas did.
17           MR. FISCHER:  Justice Thomas did.
18           THE COURT:  In his dissent, he put forth five
19   reasons why they were totally improper.
20           MR. FISCHER:  Exactly.  It was his dissent and I
21   believe he was writing for himself and either one or two
22   other Justices so it didn't carry the day.  The remainder of
23   the Court felt that a nationwide injunction at least in some
24   respects was appropriate.
25           And, frankly, you're going to think if we look at

1  the concerns that Justice Thomas raised, they're not
2  appropriate in this case or they certainly are not a reason to
3  not issue an injunction which we think is necessary to give
4  the states the full relief that we believe they made a case
5  for.  You know, Justice Thomas talks about issues need to
6  percolate among the circuits.  This issue clearly is.  There's
7  a case pending in California, there's a case pending in
8  Massachusetts where the Commonwealth of Massachusetts lost on
9  standing ground.  It continued to press ahead with that case.
10 That's before the First Circuit.  There are other cases
11 brought by private entities or organizations that are also
12 pending.
13         This issue will be addressed by a number of
14 circuits.  So -- and, frankly, I think the fact of whether or
15 not Your Honor issues a nationwide injunction isn't going to
16 have much significant impact on whether those other cases
17 proceed.  Those are decisions being made by the litigants in
18 those cases.  So it's not as if the Supreme Court, if this
19 issue ultimately reaches the Court, will be deprived of the
20 benefit of many, many courts looking at this issue.  In fact,
21 I think it's inevitable that many courts will have considered
22 this issue by the time that it comes before the Court.
23         I also think it's important to understand the harm
24 that we are asserting, which is that residents of Pennsylvania
25 and New Jersey will be deprived of contraceptive coverage and

1   will turn to state-funded plans.

2            Now, the Defendants have said Your Honor can just

3   issue an injunction that applies in Pennsylvania and New

4   Jersey.  I don't really understand what that means.

5            When you've got a situation where college students

6   in Pennsylvania may be on a health plan from their parents,

7   that their parents pay for, the parents live across the

8   country, is that college student then allowed -- is that

9   parents' plan then required to cover contraception or are they

10  exempt from the injunction?

11           If the answer is because that plan is located in

12  another state, they're not required to cover contraception,

13  then that's a harm that Pennsylvania will suffer.

14           So given the highly integrated nature of insurance,

15  achieving full relief for the states will require an

16  injunction that goes well beyond our borders.

17           THE COURT:  So in your brief, you talk about -- you

18  provide me with two categories of people who may come from

19  outside of Pennsylvania, but may use Pennsylvania's services.

20  One are the folks who commute into either New Jersey or

21  Pennsylvania.  So I suppose there you would have the

22  neighboring or nearby states.  So the question I would have

23  there is why would an injunction cover, let's say, New Mexico

24  when it's highly unlikely that someone is commuting to

25  Pennsylvania and New Jersey from New Mexico, but then I hear

1  you talk about students who come from around the country.  Is
2  there any indication, do you have any evidence to suggest that
3  there are students in Pennsylvania from every state in the
4  union or any reason to believe that that is the case, any
5  evidence?
6            MR. FISCHER:  I am fairly confident that is the
7  case.  I can't point to specific, you know, pieces of evidence
8  in the record.
9            I'll note in the amicus brief that was submitted by
10 20 states and the District of Columbia, there's a reference to
11 Pennsylvania I think having the second highest number of
12 first-year students of any colleges -- of any --
13           THE COURT:  This is the American Association of
14 College --
15           MR. FISCHER:  No, this is the one from other states,
16 from the Commonwealth of Massachusetts and 19 other states as
17 well as D.C.  I believe it's on page 14 of that brief.
18 There's a reference to, essentially, how significant a role
19 education plays in Pennsylvania, that Pennsylvania has a large
20 number of colleges and universities, and I'm confident that --
21 well, I'm reasonably confident that some individual college in
22 Pennsylvania could probably say they have students from every
23 state and certainly the state -- the Commonwealth as a whole,
24 I would be very surprised if that were not the case.  I will
25 say that and I'm happy to submit something for the record

1    later.

2            This is sort of the complicated nature and this kind
3    of shows why this case is different from other cases where
4    courts have put the brakes on nationwide injunctions.

5            There's a citation to the Chicago case which
6    involved the dispute over so-called sanctuary cities laws.

7            Well, the issue there was whether the Justice
8    Department had to give grant money to states and to cities
9    that it was trying to withhold.  Now, it's very easy to sever
10   Chicago's grant from Philadelphia's grant from your grant and
11   say, Okay, Chicago, you have shown you should prevail,
12   therefore, you get your grant money, but it doesn't matter
13   whether California, San Francisco, whether anybody else gets
14   the grant money to remedy the violation that you have alleged.

15           This is a very different situation here.  Saying
16   that the Rules should not harm anybody in Pennsylvania or
17   should not cause injury in Pennsylvania or New Jersey requires
18   much broader relief than was available in that case and
19   requires broader relief than just simply an order saying the
20   Defendants may not enforce the injunction within the borders
21   of Pennsylvania or New Jersey.  We believe that would prove to
22   be unworkable and that, therefore, something broader is
23   necessary in this case.

24           I also think it's relevant to the analysis, and this
25   is, again, I think the Court's -- the Supreme Court's decision

1    in the IRAP travel ban case touches on issues of public

2    interest and balance of equities.  It's relevant that these

3    Rules are harming women across the country.

4            There's a great deal of evidence in the record on

5    this.  We've submitted the supplemental declaration from Ms.

6    Kost from the Guttmacher Institute which breaks down per state

7    essentially the percentage of women who are -- who need

8    publicly-funded Family Planning benefits and who actually get

9    it and what that shows is there's a gap in every single state.

10   No state is able to meet all of the needs of women who need

11   Family Planning benefits.  So that if the pool of women who

12   have to rely on the state is expanded, the burden on the

13   states everywhere is going to increase.

14           It also, as I mentioned earlier, noted the fact that

15   well over half of the unplanned pregnancies in this country

16   end up imposing costs on the states.  That's true across the

17   board with the exception of a few states where the percentage

18   is just under 50 percent.  But, regardless, increasing the

19   number of women who do not have access to contraception will

20   increase the number of unplanned pregnancies and will impose

21   costs on every state in the country.

22           These again are factors that go into the equities

23   that the Court should consider in fashioning appropriate

24   relief.

25           THE COURT:  Do you think there's a perfect solution?

1   I mean, I sort of have to go between the concept of providing
2   complete relief, but also providing relief that is no broader
3   than necessary to provide full relief.  So is there a perfect
4   solution here?
5           MR. FISCHER:  Well, there is in that a nationwide
6   injunction is in many ways the least restrictive form of
7   relief that would give the states full relief for what harms
8   they've alleged.  And, frankly, if the analysis were to be
9   more restrictive than that, the Supreme Court in the IRAP case
10  would have done something different and would have said we're
11  only allowing the injunction to move forward as to the named
12  Plaintiffs, not as to individuals who are similarly situated.
13          The Supreme Court considered issues like public
14  interest, balance of equities and said it was not an abuse of
15  discretion to allow that, to allow that class of individuals
16  the benefit of the injunction.
17          So I think where there may be some tension between
18  fashioning relief that gives the Plaintiffs, you know, full
19  remedy for their harms versus fashioning a relief that is
20  broader than necessary, the Third Circuit I think has made
21  clear that the injunction to be crafted must give the
22  Plaintiffs -- must address the Plaintiffs' injury that they
23  have alleged.
24          So that, therefore, to the extent what -- you know,
25  to the extent addressing the injury that Pennsylvania and New

```
 1   Jersey have suffered requires nationwide injunction, that is
 2   the least restrictive way of addressing this claim.
 3           And I would also note I think it is relevant again
 4   that other states have weighed in.  There's an amicus brief
 5   from 20 other states and D.C. that talk about the importance
 6   of this issue to their states.  It is not as if this is a harm
 7   being felt in Pennsylvania and New Jersey alone and other
 8   states do not have an interest in this.  I think that goes to
 9   some of these other issues that are relevant.
10           And then, finally, I think that the Court should
11   consider the sweeping nature of the Rule itself in fashioning
12   relief.  You know, I think we sometimes -- I think the
13   arguments sort of drifted away from what's actually at issue
14   here.
15           We're not trying to reinstate the mandate on the
16   Little Sisters of the Poor.  Let me make absolutely clear
17   about that.  They are protected by an injunction from the
18   District Court of Colorado that says the Government cannot
19   require them to pay for contraception.  We are in no way
20   challenging that.  We're not challenging the earlier
21   exemption, we're not challenging the earlier accommodation.
22           We are challenging these Rules which allow for the
23   first time publicly-traded companies to opt out of the
24   exemption, which it's clear got opted out of the contraceptive
25   mandate, which completely do away with the accommodation and
```

1   render it totally optional even in the cases of the companies
2   that never asserted that it violated their religious beliefs
3   to fill out the form and send it to their insurance company.
4            And then, of course, there's the Moral Exemption
5   which, as Your Honor correctly held earlier, could allow a
6   company to say, It is our moral belief that women should not
7   be in the workplace and we're not going to offer
8   contraception.
9            Now, I was frankly surprised that in light of that
10  decision, the Agencies did not at least go back and say they
11  were going to withdraw this Rule, issue a new NPRM, go through
12  the process and try to address some of these concerns.
13           I don't see any real discussion of those concerns
14  and I think, as the earlier colloquy indicated, there's very
15  little substantively different about the Rules.  They
16  essentially are the IFRs with a few tweaks and a few things
17  that were true earlier sort of explained a little better.
18           So I think with all of those factors considered,
19  that the scope of the Rules that we are challenging, the harm
20  to women across the country, the integrated nature of
21  insurance in this country, the difficulty of providing
22  complete relief for Pennsylvania and New Jersey without
23  imposing a nationwide injunction and, finally, the fact that
24  this issue is going to percolate, we think a nationwide
25  injunction is the only appropriate remedy.

1                 And I also have just one final thing.  I think the
2      Ninth Circuit, as Your Honor's aware, remanded that case for
3      consideration of the appropriateness of the nationwide
4      injunction.  One of the factors that it turned on, which was
5      interesting, was that the case had been stayed after the
6      preliminary injunction was issued.  We think that that perhaps
7      should inform how our case proceeds afterwards.  And as I
8      indicated earlier, given the issue with the administrative
9      record, we likely would not agree to a further stay following
10     a preliminary injunction and we are certainly prepared to move
11     this case forward to a final remedy.
12                But in the interim, what is necessary to preserve
13     the status quo as it existed really prior to the IFRs on
14     October 5th, 2017, is a nationwide injunction that prevents
15     the Agencies from enforcing the Rule.  Okay, that's what we
16     request.
17                THE COURT:  Thank you.  Just off the record for a
18     second.
19                        (Recess taken)
20                        (After recess:)
21                THE COURT:  Okay.  Have a seat.  Okay, let's hear
22     from the defense on the nationwide injunction issue.
23                MR. SANDBERG:  Thank you, Your Honor.
24                I think the well-understood backdrop to this is we
25     don't think an injuncion is appropriate.