**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA and STATE OF NEW JERSEY, | |
| Plaintiffs, | |
| v. | No. 17-CV-4540-WB |
| DONALD J. TRUMP, *in his official capacity as President of the United States*; ALEX M. AZAR II, *in his official capacity as Secretary of Health and Human Services;* UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; STEVEN T. MNUCHIN, *in his official capacity as Secretary of the Treasury*; UNITED STATES DEPARTMENT OF THE TREASURY; RENE ALEXANDER ACOSTA, *in his official capacity as Secretary of Labor;* and UNITED STATES DEPARTMENT OF LABOR, | |
| Defendants, | |
| LITTLE SISTERS OF THE POOR SAINTS PETER AND PAUL HOME, | |
| Intervenor-Defendant. | |

## BRIEF IN SUPPORT OF INTERVENOR-DEFENDANT'S MOTION TO DISMISS

This case should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because the Court lacks Article III jurisdiction to adjudicate the Plaintiff States' claims against the regulations at issue here. 82 Fed. Reg. 47,792 (Oct. 13, 2017) ("Fourth IFR"); 83 Fed. Reg. 57,536 (Nov. 15, 2018) ("Final Rule").[1] As a threshold matter, the States have no standing to bring claims under the Establishment Clause, Equal Protection Clause, or Title VII. Turning to the Plaintiff States'

---

[1] The Little Sisters of the Poor Saints Peter and Paul Home (the "Little Sisters") address only the religious exemption rule in this motion, but many of their arguments apply to the moral exemption rule as well. *See* 82 Fed. Reg. 47,838 (Oct. 13, 2017) (interim final rule); 83 Fed. Reg. 57,592 (Nov. 15, 2018) (final rule).

1

Administrative Procedure Act ("APA") challenges, the Plaintiff States lack standing in this matter for three reasons: (1) the injury is speculative; (2) any injury would not be traceable to the Fourth IFR or Final Rule; and (3) any injury could not be redressed by this Court.[2]

## ARGUMENT

### I.    The States lack standing.

"To seek injunctive relief," the Plaintiff States must show that they are "under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). And they must "demonstrate standing for each claim [they] seek[] to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). The States fail every part of this test.

### A.  The States cannot bring Establishment Clause, Equal Protection, or Title VII claims.

The States have provided no authority for the idea that states can bring Establishment Clause claims against the federal government to challenge a religious accommodation. Since the States challenge a federal exemption rather than an expenditure or public display, they cannot have offended observer or taxpayer standing in relation to the federal government. While they argue in their Amended Complaint that the purpose and effect of the accommodation is the "advancing and endorsing [of] religious interests," Am. Complaint (Dkt. 89) ¶ 192, Establishment Clause standing requires "personal injury" not just a "claim that the Constitution has been violated." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982).

---

[2] The parties have briefed the background facts of this case in multiple filings, and the Little Sisters adopt by reference the Background section from their opposition to the States' motion for a preliminary injunction. Opp. at 2-10, Dkt. 108.

As for equal protection, states are not constitutional "persons" under the Fifth Amendment permitted to assert an equal protection claim against the federal government. *See South Carolina v. Katzenbach*, 383 U.S. 301, 323 (1966) ("The word 'person' in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union[.]"). The States likewise lack standing to bring a Title VII claim, as they are not employees, and the federal government is not their employer.

Nor do the States have *parens patriae* standing to bring these claims; as discussed further below, the state has no "standing as the parent of its citizens" to invoke its citizens' statutory or constitutional rights "against the Federal Government, the ultimate *parens patriae* of every American citizen." *Id.* at 324. Indeed, it is telling that the States have not pressed these claims before the Third Circuit even as alternative grounds for defending their preliminary injunction, stating only that the Third Circuit should remand for consideration of those claims if it reverses on the APA claims. *See* Response Brief at 48-49 n.20, *Pennsylvania v. Trump*, No. 19-1189 (March 18, 2019).

### B. The States lack injury in fact.

#### 1. *The States' purported injuries are generalized and speculative.*

The States' amended complaint is based only upon vague and speculative assertions of harm, and the evidence they have submitted since the complaint does not demonstrate harm to be any more likely. Most of the injuries that the States do assert are alleged future injuries to unnamed citizens. *See, e.g.*, Am. Complaint ¶ 137. The only alleged harms specific to the States are the lack of opportunity to comment—an argument their own actions foreclose—and downstream financial burdens on state-funded health programs. *See* Am. Complaint ¶¶ 141-154, 155.

First, it is not clear that either Pennsylvania or New Jersey could claim injury in fact solely based on the Fourth IFR (preceding the Final Rule) being issued prior to a notice and comment period. Under the APA, the federal government is charged only with providing notice and

opportunity to comment that is "sufficient to fairly apprise interested parties of all significant subjects and issues involved." *NVE, Inc. v. HHS*, 436 F.3d 182, 191 (3d Cir. 2006) (citation omitted). Here, interested parties had at least six opportunities prior to the Fourth IFR to comment "about whether and by what extent to expand" the existing religious exemption, and hundreds of thousands of them did—but Pennsylvania and New Jersey made no such comments. 82 Fed. Reg. at 47,814.[3] And many of the comments on earlier rules specifically raised the idea of the broad religious exemption that would later be adopted. Regardless, this Court has not suggested in its prior dispositions that the "deprivation of a procedural right [to earlier comment] without some concrete interest that is affected" would be sufficient to grant injury-in-fact for standing. *See Summers*, 555 U.S. at 496.

Turning then to fiscal burdens, the States' claims of injury are no more than a "chain of contingencies" that "amount[] to mere speculation" about the actions of third parties. *Sheller, P.C. v. HHS*, 663 F. App'x 150, 156 & n.33 (3d Cir. 2016) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-11 (2013)), *cert. denied*, 137 S. Ct. 2150 (2017). The States have not identified a single employer in their borders that plans to drop contraceptive coverage because of the Final Rule. Many employers in the States are already exempt from the federal mandate, either through grandfathering, the religious exemption for churches and integrated auxiliaries, or because they are small employers and are not required to provide insurance at all.[4] While the States list some in-state employers involved in litigation as possible candidates to drop some contraceptive coverage, they ignore the fact that religious objectors—including those they name—have had

---

[3] Pennsylvania joined a comment along with other states on the Fourth IFR before the Final Rule was issued, but New Jersey did not join that comment and does not claim to have commented otherwise. *See* Pls.' Mem. Supp. Prelim. Inj. at 16, Dkt. 91-2.

[4] One fifth of employers have grandfathered plans. *See* Kaiser Family Found., *Employer Health Benefits 2018 Annual Survey* 209 (2018), https://bit.ly/2T4qwbQ; *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 698-700 (2014) (grandfathered plans are exempt from the preventive services mandate); *id.* (small employer exemption applies to 34 million employees).

opportunities to seek and receive injunctions from the mandate in court, and have received such injunctions. The Little Sisters submitted a list of those injunctions at the Third Circuit and attach that list for this Court's reference as Exhibit A.[5] Importantly, some of those injunctions were in open-ended class actions or associational standing cases that allow new members to join.[6] These employers are not obligated to provide contraceptive coverage, regardless of the Final Rule, and their decisions therefore cannot cause injury via the Final Rule. At a minimum, the States should be able today—over a year and a half since the original complaint—to specify an employer not already subject to full judicial protection from enforcement who would only drop coverage *because of* the Final Rule.[7]

If the States could locate even one employer who plans to drop coverage because of the Final Rule, it must next speculate as to the religious beliefs and choices of employees. For example, women working for religious employers may share their employers' religious beliefs. *See* 82 Fed. Reg. at 47,802. They might prefer a contraceptive method still covered by their employer, since many objectors object to only 4 out of 20 FDA-approved methods. *See Hobby Lobby*, 573 U.S. at 696-98. Or they may "obtain coverage through a family member's employer, through an individual insurance policy purchased on an Exchange or directly from an insurer, or through Medicaid or another government program." Br. for the Resp'ts at 65, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016)

---

[5] In addition to the injunctions protecting the plaintiffs in the cases that are finalized, there are also injunctions protecting the plaintiffs in the pending cases challenging the mandate. *See, e.g.*, *E. Tex. Baptist Univ. v. Sebelius*, 988 F. Supp. 2d 743, 772 (S.D. Tex. 2013) (permanent injunction).

[6] *See, e.g.*, *Reaching Souls Int'l, Inc. v. Azar*, No. CIV-13-1092-D, 2018 WL 1352186, at *2 (W.D. Okla. Mar. 15, 2018); Order, *Catholic Benefits Ass'n LCA v. Hargan*, No. 5:14-cv-00240-R (W.D. Okla. Mar. 7, 2018), Dkt. 184 (granting permanent injunction of mandate to current and future nonprofit members of Catholic Benefits Association).

[7] In other ongoing litigation related to the ACA, Plaintiff New Jersey has objected to other states' standing to challenge the ACA's individual mandate based on financial injury. *State of Texas v. United States*, No. 19-10011 (5th Cir. Opening Brs. filed Mar. 25, 2019). New Jersey argued that such financial injury was "conjecture" without specific evidence that individuals in those states would enter themselves into state healthcare programs to comply with the individual mandate absent a tax penalty. Intervenor States' Opening Br. at 22, *State of Texas v. United States*, No. 19-10011 (5th Cir. Mar. 25, 2019).

(No. 14-1418), https://bit.ly/2DiCj32. That is what the Obama Administration told the Supreme Court in 2016, and it remains true today. Given the alternatives available—and their apparent efficacy in preventing the States from feeling any effects from the prior and much larger exemptions—the States have no reason to believe that the mere fact that this case concerns a *religious* exemption will mean that women will suddenly begin generating costs for state programs.

Nor is there any reason to believe the States would bear the cost of the feared unintended pregnancies. This would only happen if women with health insurance from objecting employers did not obtain contraceptives in some other way, *and* did not use their health insurance—or federal aid—for their medical expenses related to pregnancy, *and* qualified for state aid. The States offer no reason to think that even a single state resident will thread this needle, or that a single state resident ever threaded it before, despite the absence of a federal mandate until 2012 or the much larger exemptions (such as grandfathering) in place since 2012. If the States' suppositions were correct, the States would surely have been harmed prior to the Fourth IFR. But the States never intervened in lawsuits challenging the mandate and never sought a nationwide injunction (or any other relief) against these far more sweeping exemptions. Indeed, the passage of a year and a half of *this* litigation without greater clarity increasingly suggests that this concern is illusory.

A judicial decision based upon the supposition that this harm might theoretically occur now, and only now once the Final Rule takes effect, would be wholly advisory.

### 2. The States cannot sue as parens patriae.

Most of the injuries claimed in the amended complaint are to unnamed citizens. But the States are barred from asserting the rights of their citizens as *parens patriae* against the federal government. *See Massachusetts v. Mellon*, 262 U.S. 447 (1923). Even if the claimed injuries to their citizens existed, "it is the United States, and not the state, which represents them as *parens patriae*, when such representation becomes appropriate." *Id.* at 485-86; *accord South Carolina*,

383 U.S. at 324. The States seek to avoid the application of RFRA for their citizens, but that is precisely "what *Mellon* prohibits," namely a suit by a state "to protect her citizens from the operation of federal statutes." *Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007) (citation omitted).

### 3.  *The States cannot overcome these deficiencies with "special solicitude."*

Any "special solicitude" the States claim does not overcome their lack of injury in fact. *Texas v. United States*, 809 F.3d 134, 151 (5th Cir. 2015) and *Massachusetts v. EPA* do not overcome the States' deficiencies in this regard. In *Massachusetts*, the Clean Air Act's unique "procedural right" to challenge an EPA denial of a petition for rulemaking on emission standards was "critical[ly] importan[t]" to standing. *Id.* at 516, 518 (citing 42 U.S.C. § 7607(b)(1)). Nothing in the ACA, the defendants' regulations, or the Final Rule provides such a procedural right to the States.

Furthermore, the States take a broad view of *Massachusetts*'s understanding of quasi-sovereign interests. At most, *Massachusetts* defines "quasi-sovereign interests" to refer to "public or governmental interests that concern the state as a whole," not simply interests or rights of a subset of its citizens. *Id.* at 520 n.17; *see id.* at 519 (recognizing the State's valid quasi-sovereign interest in the case as pertaining to its interest in "all the air and earth within its domain"). Here, the States have not been able to show that there are *any* citizens who fall into the subset of women whose employers will drop contraceptive coverage as a result of the Final Rules.

And in *Texas*, the Fifth Circuit was careful not to substitute special solicitude for specificity regarding financial injury or for a legally protected interest. There, Texas was able to show that 500,000 people would automatically be eligible for a $130 subsidy benefit under the challenged federal program. "Even a modest estimate would put the loss at several million dollars." *Texas*, 809 F.3d at 155 (internal quotation marks and citation omitted). Here, the States have not identified even one person who would become eligible for state benefits.

**C. The States' purported harms are neither traceable to the Final Rule nor redressable by enjoining it.**

The States' claims fail because the alleged injuries are neither traceable to the Final Rule nor redressable by order of this Court.

### *1. Any injury to the States is self-inflicted.*

Any increase in contraceptive-related costs is a result of the States' decision to subsidize contraceptive access for its citizens. Thus, the States' alleged pocketbook injury is not "fairly . . . traceable" to the Final Rule. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation and alteration omitted). The agencies' decision to exempt religious entities from providing certain contraceptives to their employees only increases the States' costs because of a voluntary choice the States made, and "[n]o State can be heard to complain about damage inflicted by its own hand." *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam). As in *Pennsylvania v. New Jersey*, "nothing prevents [the States] from withdrawing" their subsidies for contraceptives. *Id.* at 664. The States are free to adjust their policies, but they should not be permitted to subsidize a service and then sue the federal government whenever a federal action supposedly means more people may claim that service.

### *2. The Court cannot redress the alleged harm.*

An order in favor of the States' claims seeking to enjoin the Final Rule would not redress the claimed harm. Religious objectors can bring their own RFRA lawsuits and obtain injunctions—and some already have—given that the government has admitted that it has no compelling interest in enforcing the underlying mandate. *See* 83 Fed. Reg. at 57,547-48. Or they can join existing classes that already have injunctions against the mandate. *See supra* note 6. Or, since many religious employers have fewer than 50 full-time employees, they can simply drop health insurance altogether. 26 U.S.C. § 4980H(c)(2). Thus, even if the agencies were prompted to reconsider their

regulations as a result of an order from this Court, no possible reconsideration could eliminate the States' alleged injury in fact—the exemption of religious employers from the mandate.

Furthermore, the federal defendants remain free to eliminate contraceptive coverage from the mandate, since Congress granted discretion to the Health Resources and Services Administration ("HRSA") to decide which services should be covered. Indeed, HRSA could edit its website tomorrow to eliminate some or all contraceptives from the list, and the States would have no recourse, since the listing of contraceptives itself is not in the Code of Federal Regulations and has never been subject to formal rulemaking. 77 Fed. Reg. at 8,725 & n.1; *see also* HRSA, *Women's Preventive Services Guidelines*, U.S. Dep't of Health & Human Servs., https://bit.ly/2OHsmgH.

### 3. The Court cannot reinstate rules that are subject to the same alleged APA problems.

Before the Fourth IFR and the Final Rule were issued, the regulations contained variations from the mandate in the form of an exemption for churches and integrated auxiliaries and a separate "accommodation" for other religious employers. That accommodation is central to the States' arguments, because if it doesn't exist, the Supreme Court's decision in *Hobby Lobby* applies, and the mandate violates RFRA. As this Court has explained previously, if the Final Rule is enjoined, the result is to "maintain the status quo," that is, the regime of rules immediately preceding the Fourth IFR. *See* Dkt. 136 at 56 (analysis of public interest).

That relief—the revival of the prior mandate regime, complete with the "accommodation" and religious employer exemption—cannot be entered consistent with the conclusion, reached by this Court previously, that "the ACA prohibits HRSA from exempting entities from providing such coverage as set forth in the Final Rules." *See* Dkt. 136 at 42. If HHS has no authority to decide "*who* must provide preventive care coverage," Dkt. 136 at 38, then it surely has no authority to exempt some employers, "accommodate" others, and impose new obligations on insurers and third-party administrators to comply in their place. Yet that is precisely the regime that the States

seek to reimpose—and in fact, the regime this Court did reimpose in its prior preliminary injunction rulings.[8] In granting this remedy, this Court was acting consistently with the remedy it rightly understood the States to be seeking, which is why the States did not object to that remedy or contest it on appeal from the first preliminary injunction.

The same is true for the States' procedural claims. The underlying mandate was created by the same IFR procedures that are the subject of the States' objection and that this Court previously found unlawful. The contraceptive mandate itself was implemented only by a list of services on HRSA's website and has never been subjected to notice and comment. *See* 77 Fed. Reg. at 8,725 & n.1; *see also* HRSA, *Women's Preventive Services Guidelines*, U.S. Dep't of Health & Human Servs., https://bit.ly/2OHsmgH. And the regulations were themselves implemented via a series of IFRs followed by final rules, as this Court recognized in its prior summary of pre-*Zubik* regulations, *see* Dkt. 136 at 4-8. To accept the States' argument is to admit that both the mandate itself and the accommodation system upon which the States' arguments rely violate the APA.

This Court's preliminary injunction opinion found that the lawfulness of the agencies' prior procedure was "not before the Court," and that the lawfulness of prior exemptions were likewise "not before this Court." Dkt. 136 at 33, 35 n.20. But the prior regulations, and their associated exemptions and accommodations, are the very system this Court was asked to—and did— reinstate. *See* Dkt. 136 at 56 (explaining that a "preliminary injunction will maintain the status quo," including the "exemptions or accommodations prior to October 6, 2017"). Simply put, when this Court is considering a remedy, the lawfulness of that remedy is *always* before the Court, equally subject to any principles of law the Court has announced. Because the States' arguments

---

[8] If the Court was correct in its first injunction that RFRA compels the government to exempt churches, Dkt. 59 at 36, it can only be for one reason: that an exemption, rather than the accommodation, is compelled by RFRA. Under that reasoning, either the accommodation without exemption is illegal, or the religious exemption is.

against the Final Rule would ultimately prove that the mandate itself is invalid, they are self-defeating, and the States' claimed harms cannot be redressed by the order they seek.

For all these reasons, the States lack standing, and the case must be dismissed.

Dated: March 29, 2019                    Respectfully submitted,

                                         /s/ Mark Rienzi
                                         Mark Rienzi, *pro hac vice*
                                         Lori Windham, *pro hac vice*
                                         Eric Rassbach, *pro hac vice*
                                         Diana Verm, *pro hac vice*
                                         The Becket Fund for Religious Liberty
                                         1200 New Hampshire Ave. NW, Suite 700
                                         Washington, DC 20036
                                         Telephone: (202) 955-0095
                                         Facsimile: (202) 955-0090

                                         Nicholas M. Centrella
                                         Conrad O'Brien PC
                                         1500 Market Street, Suite 3900
                                         Philadelphia, PA 19102-2100
                                         Telephone: (215) 864-8098
                                         Facsimile: (215) 864-0798
                                         ncentrella@conradobrien.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was electronically filed with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania using the CM/ECF system, and that service will be effectuated through the CM/ECF system.

Dated: March 29, 2019

 /s/ *Mark Rienzi*
Mark Rienzi