## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA and STATE OF NEW JERSEY,<br><br>    Plaintiffs,<br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; ALEX M. AZAR II, in his official capacity as Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; STEVEN T. MNUCHIN, in his official capacity as Secretary of the Treasury; UNITED STATES DEPARTMENT OF THE TREASURY; RENE ALEXANDER ACOSTA, in his official capacity as Secretary of Labor; and UNITED STATES DEPARTMENT OF LABOR,<br><br>    Defendants. | Civil Action No. 2:17-cv-04540 (WB) |

## FEDERAL DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

For the reasons below, as well as the reasons explained in Defendants' opening brief (Defs.' SJ Mem.), the Court should deny Plaintiffs' motion for summary judgment and grant Federal Defendants' motion for summary judgment.[1]

**ARGUMENT**

**I.        The Final Rules Are Authorized by the ACA**

As previously explained, the Rules are authorized by the ACA's delegation of authority to HRSA (a component of HHS).  *See* 42 U.S.C. § 300gg-13(a)(4) (requiring that certain health plans and health insurance issuers cover "with respect to women" such "additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the [HRSA]"). Plaintiffs' contrary interpretation of the ACA suffers from a glaring error—if it were correct, it would doom not only the Rules, but also the prior exemption for churches and their integrated auxiliaries.  Plaintiffs contend that they take no position on this point because it is irrelevant to the litigation.  *See* Pls.' Opp., ECF No. 222, at 4.  But where a statutory interpretation would produce an absurd result or an "unreasonable one plainly at variance with the policy of the legislation as a whole," it should be rejected.  *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940) (internal quotation omitted).  Plaintiffs' interpretation, under which HRSA could determine only the content, and not the scope, of coverage, would sweep away the prior exemptions along with the ones challenged here. *See* Pls.' Opp. at 3.  The legislature could not have intended such an unreasonable reading of the statute.

Plaintiffs continue to misinterpret the statute's plain meaning. Pls.' Opp. at 3.  The term "shall" imposes a mandatory obligation *on covered plans* to cover the identified preventive services, but it does not limit HRSA's authority (that is, HHS's) to decide both what preventive services must be covered and by what categories of regulated entities.  Any contrary conclusion

---

[1] In their responsive statement of material facts, Plaintiffs did not list any additional disputed facts.  Plaintiffs' Response to Federal Defendants' Statement of Undisputed Material Facts, ECF No. 223-1.  Accordingly, Federal Defendants have not filed a reply statement of undisputed material facts.  *See* Scheduling Order, ECF No. 161.

1

would mean that the Agencies likewise lacked (and continue to lack) the statutory authority to create the exemption for churches and their integrated auxiliaries. Plaintiffs also give insufficient weight to the statutory text stating that the preventive-services requirement applies only "as provided for" and "supported by" HRSA's guidelines. Pls.' Opp. at 3. Their explanation of the word "such" does not negate the fact that Congress left to HHS's discretion whether, and to what extent, those guidelines provide for and support particular coverage by particular entities. *Id.* At a minimum, the statute is ambiguous when read as a whole, and the Agencies' construction is a reasonable one entitled to deference.[2]

## II. Defendants are not Estopped from Arguing That the ACA Permits the Final Rules

Plaintiffs argue that Defendants are estopped from continuing to defend the Rules on the ground that they are authorized by the Affordable Care Act, given the United States' position in *Texas v. United States*, No. 19-1011 (5th Cir.). Plaintiffs' theory appears to be that the United States must litigate all of its other cases as if the ACA does not exist, given that the United States has argued in *Texas* that one provision of the ACA is unconstitutional and the remainder of the statute cannot be severed from that provision. This is not a winning argument for Plaintiffs—if the ACA were invalid in its entirety, then the contraceptive coverage mandate would also cease to exist. Plaintiffs' suit would fail.

Regardless, the Agencies' exercise of rulemaking authority here is not inconsistent with the government's litigation position in *Texas* case. Under *United States v. Windsor*, the Executive Branch may continue to enforce federal law even while not defending it. *See* 570 U.S. 744 (2013). Indeed, the United States' position in *Texas* is that it will continue to enforce the

---

[2] As to Plaintiffs' contention that the Rules are inconsistent with the ACA's prohibition on unreasonable barriers to healthcare, 42 U.S.C. § 18114, *see* Pls.' Opp. at 10-11, Plaintiffs fail to respond meaningfully to the fact that section 18114 is so open-ended that there is "no law to apply," *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971). In any event, the Rules do not prevent women from receiving contraception, rather, they free a small group of entities with sincere conscience objections from the obligation to provide coverage for contraception, without cost sharing.

ACA pending that case's final resolution, and, further, that the relief in that case should be limited to those plaintiffs and the ACA provisions that actually injure them—this does not include either Plaintiffs here or the contraceptive coverage mandate at all.  *See* Br. for the Fed. Defs. at 49, *Texas v. United States*, No. 19-1011 (5th Cir. May 1, 2019).  Because there is no inconsistency in the United States' positions, estoppel does not apply.  *See Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996) (positions must be inconsistent for estoppel to apply).³

### III.     RFRA Authorizes and Compels the Religious Exemption Rule

Plaintiffs do not substantively engage with the fact that RFRA prohibits on its face a federal agency from promulgating a regulation that it knows would impose a substantial and unjustified burden on a person's exercise of religion, and authorizes agencies to take affirmative steps to eliminate such burdens.  Nor do Plaintiffs dispute that an alternative interpretation would create myriad policy problems, including requiring an agency to continue to knowingly violate RFRA until a court issued an order, and removing an agency's ability to craft accommodations rather than blanket exemptions.

First, although Plaintiffs argue that the accommodation does not impose a substantial burden, Pls.' Opp. at 5-9, Plaintiffs do not dispute that the Rules are an authorized response to the precise substantial burden already identified by the Supreme Court in *Hobby Lobby*, Defs.' SJ Mem. at 16.  This rationale alone provides sufficient support for the Rules.

In addition, Plaintiffs' contention that the accommodation itself (apart from the mandate) does not impose a substantial burden on objecting entities is wrong.  Pls.' Opp. at 5-9; Defs.' SJ Mem. at 16-18.  Plaintiffs' reliance on *Real Alternatives, Inc. v. Sec' Dep't of Health & Human Servs.*, 867 F.3d 338 (3rd Cir. 2017), is misplaced.  The court in *Real Alternatives* did not determine whether the accommodation substantially burdened objecting employers or schools.

---

³ Even if the United States' positions were inconsistent, however, the Third Circuit further requires a showing of bad faith, that is, "intent to play fast and loose with the court," for estoppel to apply.  *Id.* at 361.  Plaintiffs have not, and cannot, make such a showing.

3

Instead, *Real Alternatives* dealt with the potential burden on *individuals* when the government requires employers to offer contraceptive coverage to which the individuals object. These questions require different analyses. It is the employers and other entities providing insurance that are subject to the potentially enormous fines relied on by the Supreme Court in *Hobby Lobby* to find a substantial burden, not the individual employees. *Hobby Lobby*, 573 U.S. at 720. The Third Circuit itself drew the contrast between the role of individual employees and those providing insurance in *Real Alternatives*:

> Unlike in *Hobby Lobby*, which literally required the objecting *employers* to "arrange for" contraceptive coverage in a way that effectively amounted to sponsorship, 134 S. Ct. at 2775, the Contraceptive Mandate requires nothing of the *employees* that implicates their religious beliefs as stated. There is a material difference between *employers* arranging or providing an insurance plan that includes contraception coverage—so that employees can avail themselves of that benefit—and becoming eligible to apply for reimbursement for a service of one's choosing.

*Real Alternatives*, 867 F.3d 361-62 (emphasis added). Instead of relying on *Real Alternatives*, this Court should adhere to *Hobby Lobby*'s clear statement that the court's role is not to police the sincerity or scope of an objector's religious beliefs. 134 S. Ct. at 2778, 2779.

Plaintiffs also continue to seek support from several circuit court cases that have been vacated, Pls.' Opp. at 7 & n.4, and express surprise that "the Supreme Court in *Zubik* did not at least point out that the decisions were [ ] off-base," Pls.' Opp. at 9. But *Zubik vacated* those cases in a very short order, and explicitly stated that the Supreme Court "expresse[d] no view on the merits of the cases," *Zubik v. Burwell*, 136 S. Ct. 1557, 1561 (2016), thus providing an unescapably clear indication that the Supreme Court did not intend for its order to be interpreted as expressing any view on the correctness of the circuit court decisions below. And, Plaintiffs do not renew their argument that RFRA contains a limitation on burdening third-parties, which would fail for the reasons previously discussed. Defs.' SJ Mem. at 15-16.

Finally, Plaintiffs argue that the mandate serves a compelling government interest, Pls.' Opp. at 9-10, despite its many exceptions to which Defendants have already pointed, Defs.' SJ

4

Mem. at 18. Plaintiffs can say little beyond pointing to *Hobby Lobby*, Pls.' Opp. at 9, which provided little analysis because the Supreme Court declined to adjudicate the issue. *Hobby Lobby*, 134 S. Ct. at 2780. And Plaintiffs still completely fail to address the multiple reasons the Agencies provided in the Rules to conclude that applying the contraceptive mandate to objecting entities is not the least restrictive means of furthering a compelling governmental interest. 83 Fed. Reg. at 57,546-48.

### IV. The Rules Do Not Violate Title VII or the Pregnancy Discrimination Act

Plaintiffs' brief does nothing to rehabilitate their meritless claim that the Rules violate Title VII and the Pregnancy Discrimination Act. *See* Defs.' SJ Mem. at 20-23. They contend that "[b]ecause the Rules allow employers to engage in [ ] discrimination by denying women access to required preventive services, they must be invalidated under the APA." Pls.' Opp. at 12. Plaintiffs' claims of discrimination lack merit—any sex-based distinctions flow from the statute requiring preventive services for women only. *See* 42 U.S.C. § 300gg-13(a)(4). But, in any case, Title VII prohibits only discrimination by employers and entities in the context of employer or employment-like relationships with individuals (e.g., employment agencies and labor organizations); it does not apply to rules, like those involved here, issued by the government in a sovereign regulatory capacity. 42 U.S.C. § 2000e-2(a)-(c); *see George v. N.J. Bd. of Veterinary Med. Examiners*, 794 F.2d 113, 114-15 (3d Cir. 1986). Plaintiffs respond that, if this is true, then the Government is free to issue rules "permitting employers to discriminate on the basis of sex." Pls.' Opp. at 12. This argument fails: Regulations cannot repeal statutes, *LaVallee Northside Civic Association v. Virgin Islands Coastal Zone Management Commission*, 866 F.2d 616, 623 (3rd Cir. 1989), and in any event, public policy concerns do not override the text of a statute.[4]

---

[4] Relatedly, if Plaintiffs' Title VII argument had merit (and it does not), then Plaintiffs could not invoke the APA, 5 U.S.C. § 704, because there would be an adequate alternative remedy, namely, Title VII suits against discriminatory employers. Defs.' SJ Mem. at 22.

5

## V.     Plaintiffs' Constitutional Challenges Have No Merit

Plaintiffs' Equal Protection and Establishment Clause claims also lack merit. As Defendants' opening brief explained, Plaintiffs cite no authority suggesting that declining to subsidize contraception constitutes a sex-based equal protection violation, Defs.' SJ Mem. at 23-25—a deficiency that Plaintiffs' opposition brief fails to rectify. Additionally, the Rules do not discriminate on the basis of sex, either facially or otherwise, *see id.*, "and when a facially neutral [law] is challenged on equal protection grounds, it is incumbent upon the challenger to prove that [the government] selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Harris v. McRae*, 448 U.S. 297, 323 n.26 (1980) (citation and internal punctuation omitted). "There is no evidence to support such a finding of intent in the present case." *Id*.

Plaintiffs' Establishment Clause claims similarly fail. Their attempt to conflate the Rules' accommodation of religious exercise with an impermissible promotion of religion cannot be squared with *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327 (1987), which recognized that alleviating significant governmental inference with religious exercise is a permissible legislative purpose. Plaintiffs fail to rebut Defendants' argument that any women who might be adversely affected by the exemption would be no worse off than before the contraceptive-coverage mandate was issued in the first place. Defs.' SJ Mem. at 27-28. Plaintiffs try to limit the reasoning of *Amos* to leadership- and membership-control concerns, Pls.' Opp. at 15 n.10, but *Amos* spoke more broadly of the government's authority to alleviate governmental interference with the ability of organizations to "define and carry out their religious missions." 483 U.S. at 335. That is precisely what the religious exemption here seeks to accomplish for employers with sincere religious objections to contraceptive coverage.

## VI.    The Agencies Engaged in Reasoned Decision Making

The Rules comply with the APA's relatively undemanding requirement that Agencies engage in reasoned decision making. *See National Assn. of Home Builders v. Defenders of*

*Wildlife*, 551 U.S. 644, 658 (2007).  The Agencies primarily concluded that applying the contraceptive mandate to objecting employers is not the least restrictive means of furthering a compelling governmental interest as applied to those objectors.  *E.g.*, 83 Fed. Reg. at 57,556.  The Agencies clearly explained the multiple, independent reasons for this conclusion, *e.g.*, 83 Fed. Reg. at 57,547-48, including that there can be no compelling interest in the provision of contraceptive coverage given that "the ACA does not apply the Mandate, or any part of the preventive services coverage requirements, to grandfathered plans," *id.* at 57,547.  This rationale is well founded, *see Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2232, 192 L. Ed. 2d 236 (2015) (exceptions undercut compelling interest), as are the others.  Thus, the Agencies have satisfied the APA's deferential standard.

      Plaintiffs' arguments to the contrary focus on a distortion of one of the rationales offered by the Agencies regarding the net benefits of the mandate.  *See* Pls.' Opp. at 17-19, 83 Fed. Reg. at 57,556.  As a threshold matter, that there are independent, unchallenged rationales for the Agencies' conclusion, *see* 83 Fed. Reg. 57,546, suffices to establish that Plaintiffs' argument under the arbitrary and capricious clause fails.  In any case, the Rules are not what the States make them out to be.  Contrary to Plaintiffs' assertion, the Agencies did not conclude that, as an absolute matter, contraceptives are unsafe, inefficacious, or lacking in benefits. Pls.' Opp. at 16.  Rather, the Agencies reached the more modest conclusion that the net benefits of employer-provided contraceptive coverage are less certain than previously acknowledged and do not justify demanding that those with sincere conscience objections be required to provide such coverage. 83 Fed. Reg. at 57,556.  That decision—rather than the one imagined by Plaintiffs—is the one at issue, and that decision is well supported by the Rules and the record, as explained in Defendants' opening brief.

      Not only do Plaintiffs attack a decision that the Agencies never made, but they ignore the proper, deferential standard for evaluating agency decisions under the APA.  Plaintiffs argue that the Agencies' decisions are not well founded in the record.  *See* Pls.' Opp. at 18 ("Federal Agencies cannot manufacture a scientific debate where none existed.").  This argument rests on

7

Plaintiffs' views of the best way to interpret evidence in the record, particularly medical-research literature. S*ee, e.g., id.* at 17 (recognizing that a study "noted that the role of the mandate in these early years remained unclear," but then proffering their own preferred interpretation of that study) (cleaned up). But the law is clear: The touchstone of the arbitrary and capricious standard is rationality, not whether Plaintiffs—or even the Court—would agree if they were making the decision in the first instance. *E.g., Commc'ns & Control, Inc. v. F.C.C.*, 374 F.3d 1329, 1335 (D.C. Cir. 2004). Moreover, the law requires courts to defer to an agency's conclusions—not a plaintiff's—regarding scientific matters within its area of expertise. *E.g., see also Kleissler v. U.S. Forest Serv.*, 183 F.3d 196, 198 (3d Cir. 1999). The Rules easily pass muster under the proper standard, as discussed in Defendants' opening brief.

Plaintiffs continue to press a line of argument that the Court rejected at the preliminary injunction stage, namely, that the Agencies inadequately responded to comments, *see* Second PI Op., ECF No. 136, at 26; Pls.' Opp. at 19-22, and yet they provide no reason for the Court to reach a different conclusion now. First, they advance a significantly watered-down version of their head-counting argument: They now say, unremarkably, that substantial adverse comments "may signal" an error in judgment. Pls.' Opp. at 20 (quotation marks and citations omitted). But, of course, they may not—and they do not here, as discussed throughout this brief and the opening brief. Second, Plaintiffs have wisely abandoned the untenable argument that comments from certain groups should be deemed of "elevated importance," Pls. SJ Mem. at 37, and instead argue that the Agencies have not explained why they reached a decision that "runs counter" to comments offered by certain medical groups. Pls.' Opp. at 21. But, as already explained, the Agencies addressed all significant comments, including those by medical groups. Defs.' SJ Mem. at 35.

Finally, Plaintiffs revisit their arguments that the Agencies' regulatory-impact analysis is arbitrary and capricious. These arguments remain meritless. *See* Defs.' SJ. Mem. at 35-38. The most basic flaw is that they do not take account of the deferential standard applicable to such analyses. Courts defer to an agency's estimation of the potential effects of a regulation. *Cloud*

8

*Found., Inc. v. Salazar*, 999 F. Supp. 2d 117, 123 (D.D.C. 2013), dismissing appeal 2015 WL 1606931 (D.C. Cir. March 16, 2013); *Co-op. Ass'n v. FCC*, 563 F.3d 536, 541 (D.C. Cir. 2009). Expert Agencies are in the best position to make assessments of the likely effects of their own regulations, especially in the context of the imperfect information available to make such estimates. Plaintiffs cannot fault the Agencies for a lack of omniscience, *see* Pls.' Opp. at 22-23, and for this reason, as well as the others discussed in Defendants' opening brief, Plaintiffs' challenges to the regulatory impact analysis lack merit.[5]

## VII. The Final Rules are Procedurally Proper

The Final Rules plainly do not violate the APA's procedural requirements, because they were issued only after the Agencies requested and considered public comment. Before promulgating the Final Rules, the agencies provided "a meaningful opportunity" for comment, including sufficient time "for the agenc[ies] to consider and respond to the comments." *Prometheus Radio Project v. FCC*, 652 F.3d 431, 450 (3d Cir. 2011). Indeed, this Court concluded that the States are unlikely to succeed on their claim that the Final Rules failed to comply with the APA's notice-and-comment requirements, although it also held that the States were likely to prevail on their claim that the interim rules' alleged procedural defect "fatally tainted" the Final Rules. *See* Second PI Op. at 33.

---

[5] One other point bears discussion. Plaintiffs rewrite their challenge to the Departments' estimate that 209 entities would make use of the accommodation or exemption. Plaintiffs' opening brief attacked the use of the 209-entity estimate in the context of one of two methods used by the Agencies to estimate the number of women affected, which relied on information related to the user-fee adjustment. The 209-entity estimate was not a factor in calculating that estimate, so Defendants described the 209-entity estimate as providing color or context. Defs.' SJ Mem. at 37. In their reply brief, Plaintiffs argue that the 209-entity estimate is important to the *other* method for estimating the number of women affected—the method based on the number of litigating entities. After switching their focus, Plaintiffs suggest that if the 209-entity estimate is "color," then Defendants have called into question their entire methodology. Pls.' Opp. at 22. But Defendants argued that the number provided color or context in relation to the first method, not the second, and Plaintiffs do not— and could not—argue that the use of the 209-entity estimate is flawed in the context of the litigating-entity methodology, as the Agencies calculated it straightforwardly by computing the numbers of litigating entities. 83 Fed. Reg. at 57,575.

Plaintiffs continue to misapprehend the *NRDC* case.  *See* Pls.' Opp. at 24.  In *NRDC*, the court held that the agency had failed to comply with notice-and-comment requirements in issuing an initial rule, and further held that the subsequent rulemaking did not "cure the failure to provide such procedures prior to the promulgation" of that initial rule. *Id.* at 768.  As this Court recognized, 351 F. Supp. 3d at 813, the petitioner in *NRDC* was not even challenging the final rule.  But contrary to this Court's prior suggestion, when the *NRDC* court stated that the final rule was "likewise invalid," 683 F.2d at 768, it was not addressing the procedural validity of the final rule.  Rather, the court was specifying the remedy for the procedural defects in the initial rule, which was to "plac[e] petitioner in the position it would have occupied had the APA been obeyed" when the initial rule was issued. *Id.* at 767.  Here, in contrast, there is no basis for invalidating the Final Rules in order to remedy any procedural defects in the interim rules.  If the interim rules were procedurally defective, the remedy would be to require the Agencies to engage in notice-and-comment rulemaking.  But that is exactly what the Agencies did in issuing the Final Rules.  In any event, Plaintiffs cannot dispute that they had ample opportunity to comment before the Final Rules issued, and thus any error is harmless.

For these reasons, and for the reasons described in prior briefing, including the fact that the Agencies had good cause to issue the Interim Final Rules in the first place, the Final Rules are not procedurally improper.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' motion for summary judgment and enter summary judgment in favor of Federal Defendants.

DATED: July 12, 2019                              Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MICHELLE R. BENNETT
Assistant Director, Federal Programs Branch

*/s/ Justin M. Sandberg*
JUSTIN M. SANDBERG (Il. Bar No. 6278377)

10

        Senior Trial Counsel
        MICHAEL GERARDI
        CHRISTOPHER R. HEALY
        REBECCA M. KOPPLIN
        DANIEL RIESS
        Trial Attorneys
        U.S. Dep't of Justice, Civil Div., Federal Programs Branch
        1100 L Street, NW
        Washington, D.C.  20001
        (202) 514-5838
        Justin.Sandberg@usdoj.gov
        *Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 12, 2019, a copy of the forgoing document was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.


DATED this 12th day of July, 2019.                    /s/ Justin M. Sandberg
                                                      JUSTIN M. SANDBERG