IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA and STATE OF NEW JERSEY, <br><br> Plaintiffs, <br><br> v. <br><br> JOSEPH R. BIDEN, *in his official capacity as President of the United States*; XAVIER BECERRA, *in his official capacity as Secretary of Health and Human Services;* UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; JANET L. YELLEN, *in her official capacity as Secretary of the Treasury*; UNITED STATES DEPARTMENT OF THE TREASURY; MARTIN J. WALSH, *in his official capacity as Secretary of Labor;* and UNITED STATES DEPARTMENT OF LABOR, <br><br> Defendants, <br><br> LITTLE SISTERS OF THE POOR SAINTS PETER AND PAUL HOME, <br><br> Intervenor-Defendant. | No. 17-CV-4540-WB <br><br><br><br><br><br><br> **INTERVENOR-DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY** |

The Little Sisters of the Poor Saints Peter and Paul Home (Little Sisters) submit this notice of supplemental authority as relevant to the pending motions for summary judgment (ECF 252, 254, 255) which are being held in abeyance while the case is stayed until July 30, with the federal defendants due to file a status report on or before that date (ECF 275).

On June 17, in *Fulton v. City of Philadelphia*, the U.S. Supreme Court unanimously held that Philadelphia violated the Free Exercise Clause by excluding a Catholic foster care agency from the City's foster care system because of the agency's sincere religious beliefs. 141 S. Ct. 1868 (2021). Like *Tandon* (ECF 272) a few months ago, *Fulton* confirms Free Exercise principles that, applied here, require judgment in favor of the Little Sisters. Simply put, this Court cannot

constitutionally provide the relief sought by the States. *Fulton* further confirms that there is no reason for further delay in this case.

In *Fulton*, Philadelphia ended its contract with Catholic Social Services (CSS) because CSS could not certify unmarried or same-sex couples for foster care because it believes that certification would require "an endorsement of their relationships." 141 S. Ct. at 1875. The Supreme Court held that the City's policy was not neutral and generally applicable under *Employment Division v. Smith*, could not satisfy strict scrutiny, and therefore violated the First Amendment. The decision is applicable here in several ways.

First, the Court held that "it is plain that the City's actions have burdened CSS's religious exercise by putting it to the choice of curtailing is mission or approving relationships inconsistent with its beliefs." *Id.* at 1876. Despite Philadelphia's argument that certifying foster couples is not an "endorse[ment] of" same-sex relationships, the Court said the operative fact is that "CSS believes that certification is tantamount to endorsement." *Id*. Thus, the operative question is not what the government believes is permissible, but how the religious claimants sincerely understand their religious teaching. The Little Sisters "believe[] that" complying with the Mandate "is tantamount to endorsement"—in other words, it would make them complicit in sin. *Fulton*, 141 S. Ct. at 1876; s*ee* ECF 255-1 at 22-23.[1] And the Little Sisters' religious beliefs need not be "comprehensible to others in order to merit First Amendment protection." *Fulton*, 141 S. Ct. at 1876 (quoting *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981)).

Second, the Court explained that a law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* at 1877. As in *Tandon*, the Court clarified that such "underinclusiveness mean[s] that" a law is "not generally applicable" under *Smith*. *Id.* Here, the Affordable Care Act suffers from the same problem, because it grants many secular employers an exemption denied the Little

---

[1]   The Free Exercise Clause does not require that the burden on religious belief be "substantial" in order to be actionable. *Fulton*, 141 S. Ct. at 1876 (not using the word "substantial"). But the burden is clearly substantial both here and in *Fulton.* In *Fulton*, it was losing CSS's government contract and CSS's ability to conduct its ministry. Here, it is millions of dollars in fines. ECF 255-1 at 22-23.

2

Sisters. ECF 255-1 at 3, 29 (discussing exemptions for, *e.g.*, small businesses, grandfathered plans, and churches). This "system of exceptions . . . undermines the . . . contention that [the Mandate's interests] can brook no departures." *Fulton*, 141 S. Ct. at 1882. The Mandate therefore triggers strict scrutiny and, as explained below, also fails it. After *Fulton*, neither the federal defendants, nor the States, nor this Court can implement such a system without violating the Constitution.

Nor does it matter whether the government claims it is "managing its internal operations," *Id.* at 1878, in compelling the Little Sisters to comply with the underlying Mandate, as the federal government has argued in prior Mandate litigation, Respondents' Br. at 26, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418), https://becketpdf.s3.amazonaws.com/LSP-Government-Brief.pdf ("an adherent may not use a religious objection to dictate the government's conduct of its internal affairs"). Philadelphia made this argument in *Fulton*, and was rebuffed by the Court, which noted that "[w]e have never suggested that the government may discriminate against religion when acting in its managerial role." 141 S. Ct. at 1878. So too here. The government may not discriminate against the Little Sisters' religious beliefs while exempting secular employers for the sake of convenience.

Finally, the Court in *Fulton* reiterated that in defending a law under strict scrutiny, "so long as the government can achieve its interests in a manner that does not burden religion, it must do so." 141 S. Ct. at 1881. In previous Mandate litigation, the federal government described a number of options that allowed it to meet its interests other than by requiring compliance with the Mandate: employees' opportunity to "obtain coverage through a family member's employer, through an individual insurance policy purchased on an Exchange or directly from an insurer, or through Medicaid or another government program" and thus obtain "contraceptive coverage." Respondents' Br. at 65, *Zubik*, 136 S. Ct. 1557 (No. 14-1418). Because the government has admitted that it has the ability to meet its interests through those mitigation options, "it must do so." *Fulton*, 141 S. Ct. at 1881. Imposing the Mandate on religious believers cannot survive Free Exercise review.

For these reasons, in light of *Fulton* and *Tandon*, two things are clear. First, the federal government had no choice but to provide the Little Sisters with an exemption—the Free Exercise

3

Clause required it, as did RFRA. Second, there is simply no relief that this Court can grant that would redress the States' claimed injury. Where the religious exemption to which the States object is required by RFRA and the Free Exercise Clause, no court could purport to address any potential harm arising from it without running afoul of the Constitution.

Nor is there any need to give the federal government yet more time before entering this relief. The rules at issue here have been in place since October 2017 and were upheld by the Supreme Court twelve months ago. If the federal government ever wants to change the rule, it can begin the administrative process to do so. But *this* litigation, over *this* rule, should now end. Accordingly, the Court should grant summary judgment to the defendants.

Dated: July 6, 2021

Respectfully submitted,
/s/ Mark Rienzi
Mark Rienzi, *pro hac vice*
Lori Windham, *pro hac vice*
Eric Rassbach, *pro hac vice*
Diana Verm, *pro hac vice*
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
Telephone: (202) 955-0095
Facsimile: (202) 955-0090
mrienzi@becketlaw.org

Nicholas M. Centrella
Conrad O'Brien PC
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Telephone: (215) 864-8098
Facsimile: (215) 864-0798
ncentrella@conradobrien.com

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was electronically filed with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania using the CM/ECF system, and that service will be effectuated through the CM/ECF system.

Dated: July 6, 2021

                                                   /s/ *Mark Rienzi*
                                                   Mark Rienzi